Jack KLITGAARD, Tax Assessor-Collector
For City of Austin et al., Appellants,

v.

Taylor GAINES et ux., Appellees.

No. 11911.

Court of Civil Appeals of Texas,
Austin.

April 26, 1972.

Rehearing Denied May 10, 1972.

Don R. Butler, City Atty., Thomas P. deSteiguer and Winfred O. Craft, Asst. City Attys., J. M. Patterson, Jr., Atty., Austin Independent School District, Austin, for appellants.

Kendall, Randle, Finch & Osborn, Gibson R. Randle and Joe A. Osborn, Austin, for appellees.

SHANNON, Justice.

This appeal involves the construction and application of Vernon's Ann.St.Tex.

1. Sometimes referred to in this opinion as the "amendment."

Const. art. 8, Section 1–d,[1] which, in general, establishes a standard of assessment for ad valorem tax purposes, other than market value, for land designated for agricultural use.

Appellees, Taylor Gaines and wife, Inez Gaines, filed suit in the District Court of Travis County against appellants,[2] Jack Klitgaard, Tax Assessor-Collector for the City of Austin, the City of Austin, and the Austin Independent School District to enjoin them from assessing or collecting ad valorem taxes on any basis other than a valuation for agricultural use for 1,450 acres of land in Travis County for the years 1968, 1969, and 1970. Appellees also sought a writ of mandamus to command appellants to approve their application to designate their lands as agricultural within the amendment.

Upon trial to the court, judgment was entered that appellees' land be designated for agricultural use under the amendment for the years 1968, 1969, and 1970, and the permanent injunction and a writ of mandamus were issued. We will affirm that judgment.

The relevant parts of the amendment are as follows.

"§ 1–d. Assessment of lands designated for agricultural use

Sec. 1–d. (a) All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use. 'Agricultural use' means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary oc-

2. Referred to in this opinion as the "tax collectors" or "appellants."

cupation and source of income of the owner." [3]

Findings of fact and conclusions of law were requested and filed by the court. A summary of the facts follow.

Appellees' land is located in the limestone ridges and hollows west of Austin, and has been Gaines' homeplace since he was a boy. Since their marriage in 1943, Gaines and his wife have lived on this land which they have farmed and ranched continuously except for about twenty months when he was in the army during World War II. Since 1946 they have personally supervised and labored in raising crops and livestock on the land. At all times appellees have conducted their operation as a business venture for profit, and farming and ranching have been their only occupation.

In addition, appellees own a 3,057 acre ranch in Bastrop County which they operate with their Travis County ranch. Since the two ranches are operated as one, using the same equipment and the records of income and expense are commingled, there was no feasible way of allocating income and expenses between the two ranches. On their Travis County ranch appellees raise primarily cattle and hogs. At the time of the trial, they were running about sixty cows with calves and about thirty sows. Appellees also lease out the ranch for deer hunting and, also lease a portion of the Bastrop ranch. Over the years they have raised and sold hay and grain, and have sold wood, oak trees, hides, and pecans from the ranch. Appellees' income from farming and ranching operations for the years 1964–69 inclusive totaled from a low of $6,155.00 to a high of $25,356.00.

During the same period of time, appellees received money from other sources, those being principal and interest on occasional land sales; rental of a commercial property known as El Toro acquired by Gaines in 1952 under his mother's will, and oil and gas bonus and delay rentals from unsolicited mineral leases on a part of the Bastrop County ranch. There has been no discovery or production of minerals from that ranch.

The principal and interest were derived from three occasional sales of land. In 1962 appellees created four irrevocable trusts for the benefit of their children. Because of a low tax base, appellees were advised to sell, rather than give, 545.95 acres of land to the trusts. This they did, and received as payment a note payable with interest in five years. The note was to be paid piecemeal as the land increased in value and was sold by the trustee. The court found that the sale to the trust was *bona fide* at market price and was a part of appellees' estate plan. The court also found that this sale was not a business venture of the appellees.

In 1965 appellees sold a 12.25 acre building site, and in 1967 an adjoining 2.13 acres to the same person. Payment on these sales were received by appellees in 1967, 1968, and 1969. In 1968, appellees sold a 235 acre portion of their Bastrop County ranch which they considered undesirable because it was connected with the rest of the ranch by a long narrow lane making it difficult to move livestock and equipment. The purchaser of the 235 acres made a down payment and signed a note for the balance payable in ten annual installments. Apropos these sales the court found that they were occasional, isolated, and not a part of any business venture of appellees. No proceeds from these sales were used for any business or investment other than for appellees' farming and ranching operation.

After the adoption of the amendment in 1966 appellees applied for, and were grant-

3. One may speculate whether the amendment is the people's response to Gibbon's maxim that all taxes must, at last, fall upon agriculture. *Decline and Fall of the Roman Empire.*

ed, a designation for their lands in the school district as being for agricultural use for the year 1967. Although at all times since 1967 appellees continued to devote their land to the identical use as in 1967 and before, appellants would have denied their application, but for the injunctive relief afforded by the court.

The total assessed value of appellees' land for agricultural use for each of the years 1968, 1969, and 1970 was $88,560.00, while the total assessed value, if market value were used, would have been $549,440.00. The ad valorem taxes at agricultural value for each of the years would be $1,200.00 to $1,300.00 as opposed to $7,527.00 to $7,967.00 at market value. Gaines testified that if his Travis County ranch were taxed at market value rather than for agricultural use, he would be forced to sell the ranch "pretty fast."

The court concluded that appellees' use of the land in issue from 1964 to the time of trial constituted "agricultural use" as that term is employed in the amendment and the appellees' farming and ranching business constituted their primary occupation and source of income within the meaning of the amendment. The court concluded further that the principal and interest received from notes, the rentals from one commercial property and the bonuses and delay rentals from the mineral leases did not constitute money received by appellees in any business venture or occupation within the meaning of the amendment. Finally, the court determined that appellees' Travis County ranch qualified for designation for agricultural use as defined in the amendment during the years in question.

In the outset appellants attack the judgment by five points of error, all procedural in nature. The first is that the court lacked jurisdiction to entertain the case since the amendment provided no procedure for appeal, and hence the tax collector's determination was final. In points two and three appellants seek to avoid review of the tax collector's determination by claiming that the remedies of mandamus and injunction were not available for the reason that appellees did not plead, or prove, that the tax collectors abused their discretion or were guilty of any malfeasance, misfeasance or nonfeasance. Points one through three are baseless and are overruled.

■■■■ In the absence of an appeal provided in the amendment, one will be implied. See Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1949); English Freight Co. v. Knox, 180 S.W.2d 633 (Tex. Civ.App.1944, writ ref'd w. o. m.). The judgment in this case declared that appellees' land qualified for agricultural use taxation and that appellant Klitgaard must approve appellees' applications for 1968, 1969, and 1970. This is the holding which appellants dispute. The writs of injunction and mandamus were but a means of enforcing and protecting that judgment. As such, it is unnecessary to examine at length the nature of the tax collector's duty other than to observe that his application of the law under the amendment to the undisputed fact raises but a question of law subject to review by the courts as any other.

■■■■ By points four and five appellants claim that the court did not have "jurisdiction" to consider appellees' land for qualification for agricultural use taxation in 1970 or enforce such qualification by mandamus since the tax collectors had not denied the 1970 application. These points do not raise a jurisdictional matter. Jurisdiction has to do with the power of the court to determine the subject matter of the controversy. The court in this case had the power to consider both the tax qualification and enforce its judgment by mandamus.

■ What appellants probably mean by points four and five is that the matter of the 1970 application was premature. However, appellants did not properly raise this point in the trial of the case. Prematurity of suit is usually raised by a plea in abatement. McDonald, Texas Civil Practice, Vol. 2, § 7.16, p. 200 (Revised Volume 1970). Pleas in abatement, as other dilatory pleas, must be verified. McDonald, Texas Civil Practice, Vol. 2, § 7.05.1, p. 175 (Revised Volume 1970). Appellants did not file a plea in abatement, but rather attempted to raise the question in an unverified motion for judgment.

To qualify under the amendment the lands must be owned by (1) "natural persons," (2) who use the lands in the "raising of livestock or growing of crops," (3) "as a business venture for profit," and (4) "which business is the primary occupation and source of income of the owner." Driscoll Foundation v. Nueces County, 445 S.W.2d 1 (Tex.Civ.App.1969, writ ref'd n. r. e.), 450 S.W.2d 320 (Tex.1969).

■ Appellants concede that appellees qualify under the first three requirements of the amendment, that the lands are owned by (1) "natural persons," (2) who use the land in the "raising of livestock or growing of crops," (3) "as a business venture for profit." They claim in effect by their remaining spate of ten points of error that there was no showing that appellees qualified under the fourth requirement, (4) "which business is the primary occupation and source of income of the owner." We hold that appellees discharged their burden by showing that "the primary occupation and source of income of the owner" was the agricultural use of the land.

In the trial of the case and in this appeal the tax collectors emphasize only that part of the fourth requirement which speaks of the "source of income of the owner." Appellants' view is that the applicants' source of income should be investigated and classified as either agricultural and non-agricultural. Upon investigation, if the non-agricultural income should be greater than the agricultural income in the preceding year, then the tax collectors would refuse to designate the land for agricultural use despite drought, disease or disaster. Appellants most probably champion their construction of the fourth requirement for the reason that the undisputed facts are that farming and ranching is not only the *primary* occupation of appellees, but also their *only* occupation.

In applying his dollar balancing test by determining what is agricultural and non-agricultural income, appellants' tax collector sometimes borrows from the doctrines of the Internal Revenue Service, but not "necessarily." On cross-examination Mr. Klitgaard, the tax collector, was asked about his guidelines in arriving at agricultural or non-agricultural income. His rather startling reply was, "We really have no guidelines, significant guidelines relative to the law as written here, and there are many situations that arise that are very difficult to get answers to out of the law itself."

An examination of the tax collectors' determinations as to non-agricultural income seems to bear out the accuracy of his statement. For example, the tax collectors excluded the proceeds from deer leases from their listing of agricultural income, as were proceeds from the leases of a portion of the Bastrop County ranch, sums ranging from $3,000.00 to $5,890.00 per annum.

■ In passing we observe that both deer leases and grass leases involve the utilization of the resources of the land for profit, and that both constitute "agricul-

tural uses" of the land within the meaning of the amendment.[4]

■ The tax collectors included as "non-agricultural" income not only the interest, but also the principal [5] received from appellees' notes and the rental from the commercial property left Gaines under his mother's will. The inclusion of these sums, of course, would in some of the years cause appellees to have significantly more "non-agricultural" than agricultural income. The point ignored by the tax collectors is that these sums do not comprise income received by appellees in any business venture or occupation within the meaning of the amendment.

■ Eligibility for the benefits of the amendment is not to be determined by the vagaries of nature or the market, nor by fortuitous investment or inheritance. But rather to qualify under the amendment one must be engaged in a bona fide effort to earn a profit from the land by agricultural operations. To this end the appellees devoted all of their efforts and realized substantial sums each year from the sale of cattle, hogs, pecans, and leases for grass and deer hunting, all involving the utilization of the resources of the land for profit.

Without doubt, appellees are not land speculators or subdividers, nor are they weekend dilettantes. Contrarily, they have spent their lives cultivating the land as their primary occupation and source of income. As such, they are among those whom the amendment was intended to benefit.

The judgment is affirmed.

Affirmed.

---

4. In Driscoll Foundation v. Nueces County, *supra,* the Beaumont Court at least inferentially held that sharecropping the land was an "agricultural use."

5. The tax collectors' view of the word, "principal," departs substantially from general notions. "Principal" is generally defined as a capital sum placed at interest, due as a debt, or used as a fund, as distinguished from interest or profit. Webster's New International Dictionary (Second Ed.).