Margaret MAXWELL and the Town of Flower Mound, Appellants,

v.

Bernard WHITE, Appellee.

No. 17943.

Court of Civil Appeals of Texas, Fort Worth.

March 9, 1978.

Hutchison, Price & Boyle, and John F. Boyle, Jr., Dallas, for appellants.

Randall S. Boyd, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

For several years prior to and including the calendar year 1976 Bernard White owned 246 acres of land in the municipal limits of the Town of Flower Mound. At all material times White's use thereof was for the raising of livestock for profit. Prior to the assessment of such property for 1976 tax purposes White filed with municipal Tax Assessor-Collector for Town of Flower Mound his "Sworn Declaration of Land for Agricultural Use" upon these acres. His attempt was to have the same qualified to be assessed for tax purposes by the provisions of the Tex.Const. art. 8, § 1–d, "Assessment of lands designated for agricultural use".

Upon the denial of White's application by Margaret Maxwell, Tax Assessor-Collector, he filed suit for relief by way of mandamus and injunction.

White sought no temporary relief. On the appeal the matter of mandamus has ceased to be important and is disregarded. The matter of injunctive relief is considered. On this White's prayer requested "that upon final hearing hereof Defendants, . . . be permanently enjoined from assessing taxes for the year 1976 on any basis other than agricultural assessment and that the Court set the value of the land for such agricultural assessment."

While White's suit was pending upon the docket of the court without anything done to prosecute it the Flower Mound taxing authorities proceeded with activities usual and customary to carrying its plan of taxation into effect. White did not render his property for taxation, did not appear before the Tax Board of Equalization, and did not appear before the City Council.

It was after the plan of taxation for 1976 was put into effect that White brought his suit to trial. Since he did not obtain any relief by way of mandamus we may disregard that aspect of his suit; however, following trial before the court on February 24, 1977, he did obtain injunctive relief by judgment dated April 23, 1977, enjoining Flower Mound and its Tax Assessor-Collector from assessing his property for ad valorem tax purposes for 1976 "on any basis other than an agricultural assessment of the land . . . ." From this judgment Margaret Maxwell and the Town of Flower Mound have appealed.

Judgment reversed; the injunction is dissolved and the case dismissed.

■ It is settled law in Texas that where an aggrieved tax payer fails to avail himself of the affirmative remedies of injunction and mandamus to prevent a taxing authority from putting an invalid and arbitrary plan of taxation into effect, but waits until suit is brought against him for delinquent taxes, his right to relief is limited. Once such a plan is put into effect, in the absence of a showing, by comparison of the assessments against his property with assessments against other like property, of a gross discrimination against him, the land owner may defeat recovery of taxes only to the extent that they are excessive, and he must assume the burden of proving excessiveness. He must show that the use of such a plan worked to his substantial injury, and the extent of such injury. No matter how much the tax plan violates the State Constitutional pattern the only relief of a taxpayer defending a delinquent tax suit is to show in dollars that he is worse off. We forego citation of authority.

■ In view of the above settled principle of law we have, in the case before us, this question: Has an aggrieved taxpayer thus sat idly by until the taxing authority has put its plan of taxation into effect when he has timely filed suit for injunctive relief but has done nothing more and has not brought his suit to trial?

That is exactly the situation of Mr. White in the instant case. We hold White's position, under the circumstances, to be no different from one who neither sues nor is sued until the taxing agency has, with attention to the usual procedure as predicate therefor, put its plan of taxation into effect. White, though having filed suit for injunction—and by service of citation having given notice of the fact—could not be said to have "availed himself to the affirmative remedy of injunction" prior to having called at least some aspect of his suit to the attention of the court, with request for some action by the court. Specifically, the prayer in White's petition for enjoinder of any but a particular assessment became worthless after there had been some other character or form of assessment in consequence of his failure to prosecute his suit.

White's suit, by the time he brought it before the court, had become moot. See 31 Tex.Jur.2d, p. 70, et seq., "Injunctions," III. "Principles Governing the Grant of Injunctive Relief," § 23 "(Factors considered)— Effect of completed act", and § 27 "(Factors considered)—Futility of issuance; Necessity for judicial supervision."

The trial court having not dismissed the action, it is the authority of this court to dismiss it in the place and stead of the trial court. That such be done is the judgment of this court, coupled with order which dissolves the purported injunction granted by the trial court.

However, in the event we err in the dismissal we take occasion to state that we would, in the alternative and for other reasons, reverse the judgment of the trial court and dissolve the injunction.

Under the undisputed facts White was not qualified to claim entitlement to have his lands assessed by designation of agricultural use under the provisions of Tex.Const. art. 8, § 1–d. The Supreme Court, in *Gragg v. Cayuga Independent Sch. Dist.*, 539 S.W.2d 861, 869, et seq. (1976), has spelled out the requirements for one to be so qualified. We quote therefrom:

"[5] We hold that a landowner seeking the agricultural use designation and assessment can qualify by discharging his burden of timely showing in a proper administrative or judicial proceeding that his land is designated for agricultural use under the terms of Sec. 1–d of Article 8, including a showing that such use in a business which is his primary occupation and source of income, without showing that his agricultural business occupies more than 50% of his time or accounts for more than 50% of his total gross income for the relevant years. It is sufficient if the landowner shows that he devotes a greater amount of time to his agricultural business than to any other occupations or businesses and that he receives more gross income from his agricultural business than from any other occupation or business. As hereafter shown, Petitioner Gragg failed to carry his burden of proof timely or satisfactorily with reference to his gross income from agriculture as compared to other business ventures.

"[6] It has been suggested that this interpretation might lead toward the fractionalization of other businesses conducted by a farmer-landowner in order to make his gross receipts from agricultural uses larger than any one of several of his other businesses. Tax assessors are given sufficient authority under the amendment to ferret out and ignore any such artificial arrangements designed to qualify for the special agricultural tax assessment. If a landowner-agriculturalist with a greater gross income from the oil business or any other occupation intentionally divides his business into multiple corporations or partnerships for the purpose of making his agricultural income greater than the gross income of any one of the multiple separate but related business entities, the tax assessors have the authority to deny the application and prevent wrongful use of the agricultural assessment amendment.

*"Other Sources of Gross Income Should Include Only Business Occupations, Ventures or Investments*

"[7] Petitioner Gragg contends that only sources of gross income from occupations or business ventures carried on for profit should be compared with gross income from agricultural sources in determining eligibility for the agricultural use designation. This seems to be the clear intent of the agricultural assessment amendment. Only farmers and ranchers who conduct agricultural uses of the soil 'as a business venture for profit' are eligible, and then only if such business venture 'is the primary occupation and source of income of the owner.' It would seem grossly unfair to disqualify a farmer or a rancher because of greater receipts from social security, retirement pay, or any other source which was not an occupation or business venture operated for profit. In *Klitgaard, supra, [Klitgaard v. Gaines*, 479 S.W.2d 765 (Tex.Civ.App.—Austin, 1972, writ ref'd n. r. e.)] it was held that proceeds from several sales of land, principal and interest payments on notes given as partial payment for said lands, rentals from inherited commercial property, and oil and gas bonus and delay rentals from unsolicited mineral leases were occasional, isolated, and not part of any business venture. Therefore it was held that none of such receipts comprise the type of income from an occupation which must be balanced

against the gross income from agricultural uses. The Court of Civil Appeals held: 'Eligibility for benefits of the amendment is not to be determined by the vagaries of nature or the market, nor by fortuitous investment or inheritance.'

"[8] In *San Marcos, supra, (San Marcos Consolidated Ind. School Dist. v. Nance,* 495 S.W.2d 335 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.)) the trial court specifically instructed the jury that it should not consider the receipt by the owner of delay rentals or bonuses from non-producing oil and gas leases on the taxed lands; use of the land for residential purposes; or the receipt by the owner of any annuities, retirement income, pensions, social security payments, or old age assistance. We approve this instruction, because none of these uses or receipts constituted income from occupations or business ventures of the landowners. The non-agricultural sources of income to be considered in determining a landowner's 'primary source of income' should be those produced from his activity or business ventures in which he works or gives continuing supervision or attention. In *San Marcos* the jury was charged as follows:

" 'You are instructed that the term "income," as used in this charge, means that which comes in or is received from *any occupation or business venture or investment of capital* without reference to the outgoing expenditures.' (Emphasis added.)

"[9] We approve that construction except with reference to 'investment of capital.' Income from capital investments should not be considered when the receipts come from the sale of long held assets or as the consequence of an occasional purchase, sale, or investment or loan of funds. The gross income from the investment of capital should be considered only if such investments constitute an occupation or business which requires the management or continuing supervision or attention of the landowner.

"[10] Under the facts in the present case we approve the trial court's consideration of investment income, because Mr. Gragg did not discharge his burden of proving that such receipts were not returns from related or separate business ventures or occupations.

"In both *San Marcos* and *Klitgaard, supra,* it was held that the burden is upon the landowner claiming the agricultural use designation to show the tax assessor, or a court that he is entitled to the designation. Petitioner Gragg wholly failed to attack by appeal or seek injunctive relief from the assessment of his property upon which the school district's suit is based. He sat by and permitted the assessments to be made, the tax rolls to be prepared, and this suit for taxes to be filed against him before challenging the refusal of the tax assessor to give his land the agricultural use designation. The proper procedure would have been to seek an injunction or mandamus requiring the tax assessor to give the agricultural designation as was done in *San Marcos* and *Klitgaard, supra.*

"[11] Even if the tax assessor had been given all of the evidence on this taxpayer's income that was introduced at the trial, the denial of the agricultural use designation would have been justified. The taxpayer's gross agricultural income during the three calendar years of 1970, 1971 and 1972 (added together), was approximately $1 million, as compared with $1.5 million income from all other sources. He admitted that his income reported from his oil operations was 'net' rather than the 'gross,' which he contended for and reported in connection with his agricultural income. There was simply no proof of his gross income from the oil business. Neither was there any proof that the gross receipts from his oil operations or another business venture did not exceed the gross receipts from his agricultural business.

"The record fails to show that the denial of the agricultural use exemption to this taxpayer by the tax assessor was unreasonable, arbitrary or in violation of requirements of the law. The burden fell upon the taxpayer to make that showing, and the trial court and Court of Civil Appeals have

correctly held that the taxpayer failed to do so. See *State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569 (1954); *State v. Houser,* 138 Tex. 28, 156 S.W.2d 968 (1941)."

White's proof upon trial below showed his income "per year" (which the trial court obviously considered as sufficient to show the 1976 gross income and the annual gross income for several years prior thereto) as:

| Income Sources and Amounts | |
| --- | --- |
| Rent – Houses | $ 840.00 |
| Rent – Commercial | 8,000.00 |
| Interest | 1,500.00 |
| Stock Dividends | 200.00 |
| Agricultural activity on land involved | 1,582.70 |
| Social Security (inapplicable for consideration.) | |

■ Even if White's rent income be calculated as applicable to the commercial property alone, without consideration of the additional income from rents, the $8,000.00 "per year" when "balanced" against the $1,582.70 gross income from agricultural activities establishes as a matter of law that White's use of the land in question for agricultural activities did not produce sufficient gross income to make of it the primary source of his income and thus to qualify the land as taxable as "for agricultural use" by the constitutional provision in Tex. Const. art. 8 § 1–d.

■ To state the same thing in other words: Conceding for the purpose that the raising of livestock on such land was, as White testified, his primary occupation, yet it was not the primary source of his income; because it was not the primary source of his income within the meaning and intent of the Constitution and two requisites for "agricultural use qualification" did not co-exist, i. e., the agricultural operation was not the primary business as judged *both* by the commitment of effort *and* the receipt of income because the gross income from rents was some five or six hundred per cent greater in amount than his gross earnings from agricultural activities on the land in question. This fact positively disqualified White's land as proper to be taxed by the "agricultural use qualification."

Judgment is reversed; injunction is dissolved and the case is dismissed.