(783 P.2d 1310)

No. 63,398

MARGARET K. CORBET AND KENNETH CORBET, *Appellees*, v. THE BOARD OF SHAWNEE COUNTY COMMISSIONERS, *et al.*, *Appellants.*

Opinion filed December 15, 1989.

*Douglas F. Martin*, county counselor, for the appellants.

*Larry E. Gregg* and *John R. Hamilton*, of Hamilton, Gregg, Barker & Johnson, of Topeka, for the appellees.

Before DAVIS, P.J., REES and BRISCOE, JJ.

BRISCOE, J.: Defendants Board of Shawnee County Commissioners (Commissioners), Shawnee County Zoning Administrator (Zoning Administrator), and members of the Shawnee County Board of Zoning Appeals (Zoning Board) appeal from a summary judgment entered in favor of plaintiffs, Margaret and Kenneth Corbet, which reversed the Zoning Board's decision to require a special use permit for operation of a wildlife hunting preserve. We affirm the district court's ruling and conclude the Corbets' proposed use of their land as a hunting preserve is an agricultural use which does not require a special use permit.

Margaret is the owner of 95 acres in rural Shawnee County. Her son, Kenneth, is a purchaser of the real estate under a contract for deed. The real estate is located outside the three-mile limit of the city limits of Topeka and is zoned "RA-1" agricultural. The Corbets filed an application for a special use permit

to operate a wildlife hunting preserve and the Topeka-Shawnee County Metropolitan Planning Commission (Planning Commission) recommended disapproval. On advice of counsel, the Corbets withdrew the application prior to formal action by the Commissioners and continued operation of the preserve. After an adjoining landowner complained, the Commissioners began an investigation and sought the opinions of the Planning Commission staff, the Zoning Administrator, and the Shawnee County Counselor (Counselor). The Planning Commission and the Zoning Administrator concluded the zoning regulations require that a landowner first obtain a special use permit to operate a hunting preserve on RA-1 agricultural property. The Counselor concluded a special use permit is not required.

The Zoning Administrator issued a violation notice advising the Corbets to cease operation of their hunting preserve until a special use permit was approved. The Zoning Board, upon review of the Zoning Administrator's action, concluded a special use permit was required. The Corbets challenged this decision by filing suit in district court pursuant to K.S.A. 19-2926. The district court reversed the Zoning Board's decision and it is from that decision defendants appeal.

The issue presented is whether the Corbets' proposed use of their land as a wildlife hunting preserve is an "agricultural purpose" which would exempt them from county zoning regulations.

The parties have stipulated that fishing; hunting of upland birds, migratory birds, and waterfowl; dog training; and clay target shooting are activities which could lawfully be conducted on the subject property by the landowners and their guests, without the payment of a fee. The parties also stipulated that the Zoning Administrator determined said activities are in violation of the Shawnee County zoning regulations only if a fee is charged.

The Corbets propose to use their land to provide hunting, fishing, clay target shooting, and dog training to the public on a fee basis. Hunting and fishing would be restricted to comply with the Kansas Fish and Game Commission rules and regulations. Kenneth testified that he had spent a good deal of time and money developing the acreage as a wildlife habitat, including the provision of food, water, and ground cover beyond that which naturally occurs. He has planted crops such as milo and soybeans

for the specific purpose of providing sources of food for wildlife. The subject property contains a mixture of trees and brush, and cultivated crops. The acreage also contains Kenneth's residence and one or more ponds.

Kenneth stated the primary uses of the hunting preserve would be hunting and fishing, but ancillary uses would include providing hunters with dogs if requested, clay target practice, and providing coffee or snacks to the hunters. The ancillary services were described only as an accommodation to the hunting and fishing activity. The Planning Commission and the Zoning Administrator made repeated reference to the operation of a snack bar on the premises. The Corbets stated in response that there is no snack bar or shop operated on the premises. Those who hunt and fish on the preserve are offered coffee from a thermos and occasionally a cupcake or snack, but these items are not sold.

K.S.A. 19-2901 *et seq.* authorizes the rezoning of county property. The present issue centers around the interpretation of K.S.A. 19-2921, which states in part:

"[N]o determination nor rule nor regulation shall be held to apply to the use of land for agricultural purposes, nor for the erection or maintenance of buildings thereon for such purposes so long as such land and buildings erected thereon are used for agricultural purposes and not otherwise."

Pursuant to these statutes, Shawnee County adopted zoning regulations for the "RA-1" agricultural district. Section 6 provides that the premises shall be used only for the following purposes:

"1. Agricultural uses including the raising of crops, livestock, poultry or animals for the production of food or any activity connected therewith normally found to be necessary and essential to this purpose.

"2. Any activity deemed essential to the utilization and conservation of natural resources."

The Corbets argue that 19-2921 and the RA-1 agricultural district regulations exempt them from the county zoning requirements and, therefore, a special use permit is not required. The district court agreed.

No Kansas case has specifically defined what an "agricultural purpose" is under 19-2921. Several cases have considered whether certain activities fall within that term. See *Fields v. Anderson Cattle Co.*, 193 Kan. 558, 563-64, 396 P.2d 276 (1964) (agricultural purpose includes operation of livestock feed lots); *Carp v. Board*

*of County Commissioners*, 190 Kan. 177, 373 P.2d 153 (1962) (agricultural purpose includes a hog feeding operation); *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P.2d 382 (1958) (raising canaries for sale is consistent with an agricultural purpose, but operation of an automobile garage and body repair shop is not).

In a more recent case, *Blauvelt v. Board of Leavenworth County Comm'rs*, 227 Kan. 110, 605 P.2d 132 (1980), the issue centered around the construction of a farmhouse which did not meet zoning regulation requirements. The court found:

"The obvious purpose of the proviso in K.S.A. 19-2921 was to favor agricultural uses and farmers. Since this state's economy is based largely on the family farm it would appear the intent of the legislature was to spare the farmer from more governmental regulation and not to discourage the development of this state's farm industry." 227 Kan. at 113.

There is no Kansas case law specifically addressing the issue of whether a hunting preserve is an agricultural use. The Court of Civil Appeals of Texas has found that a farm which is also leased for deer hunting constitutes an "agricultural use" of land for tax purposes. *Klitgaard v. Gaines*, 479 S.W.2d 765 (Tex. Civ. App. 1972). The statute at issue defined "agricultural use" as "the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner." 479 S.W.2d at 766-67. In *Klitgaard*, the court concluded that "deer leases and grass leases involve the utilization of the resources of the land for profit, and that both constitute 'agricultural uses' of the land." 479 S.W.2d at 769-70. Other cases have held that, in the final analysis, the nature of the use made and not the identity of the user of the land determines whether the activity may be permitted. See *Tuftee v. County of Kane*, 76 Ill. App. 3d 128, 394 N.E.2d 896 (1979) (boarding and training show horses constitute an agricultural use of the land); *Barnhart v. Z.H.B. of Nottingham Twp.*, 49 Pa. Commw. 481, 411 A.2d 1266 (1980) (boarding horses is an agricultural use). In the present case, the Corbets are cultivating the land to provide food for wildlife. The nature of this activity relates to agriculture as it involves utilization of the re-

sources of the land for production of plants and animals useful to man. 3 C.J.S., Agriculture § 2.

It is a well-established principle that zoning ordinances must be liberally construed in favor of the property owner. *Koppel v. City of Fairway*, 189 Kan. 710, 713, 371 P.2d 113 (1962). "Zoning ordinances, being in derogation of the right of private property, should be liberally construed in the property owner's favor, and where exceptions appear they are liberally construed in favor of the property owner." *Koppel*, 189 Kan. at 713.

Considering the legislative policy of favoring agricultural uses and promoting the development of the farm industry, together with the liberal construction given zoning ordinances in favor of property owners, the operation of a wildlife hunting preserve, under the facts of this case, is an "agricultural purpose" as contemplated by 19-2921 and is exempt from county zoning regulations.

Defendants contend the district court erred in failing to give sufficient weight to the ruling of the Zoning Board.

Any action of the Zoning Board is subject to judicial review pursuant to K.S.A. 77-621. The scope of judicial review under the statute relevant to this issue is limited to whether the board erroneously interpreted or applied the law. Courts give great weight under the doctrine of operative construction to statutory interpretation of a statute by the administrative body charged with enforcing the statute. *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 682, 772 P.2d 786 (1989). Although the administrative interpretation of a statute should be given consideration and weight where the statute is ambiguous, the final construction of a statute rests with the courts. *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, 647-48, 518 P.2d 453 (1974). The issue on appeal is whether a wildlife hunting preserve is an "agricultural purpose" within 19-2921 and the zoning regulations adopted pursuant to 19-2901 *et seq*. The question raised is one of law and not of fact. Therefore, it is the function of both the district court and this court to interpret the statute.

In its decision, the district court held the hunting preserve is an agricultural use of the land. The court stated the proposed use fits within the policy underlying 19-2921, that is, to allow

the Corbets to use their land profitably without governmental hindrance. As stated in *Blauvelt*, 227 Kan. at 113, the obvious purpose of the statute is to favor agricultural uses and farmers and not to "discourage the development of this state's farm industry." The district court also held in the present case: "This is in the tradition of the liberalized use of real estate and the narrow interpretation of any restrictions placed thereon." See *Koppel*, 189 Kan. 710. We agree with the district court's conclusion.

Affirmed.