No. 42,758

DAVID KOPPEL, T. R. HEATH and EUGENE F. ENGEL, *Appellees*, v. CITY OF FAIRWAY, JOHNSON COUNTY, KANSAS, *Appellant.*

(371 P. 2d 113)

Opinion filed May 5, 1962.

*Paul E. Wilson,* of Lawrence, argued the cause, and *John R. Keach,* of Mission, was with him on the brief for the appellant.

*H. Thomas Payne,* of Olathe, argued the cause, and *Howard E. Payne, W. C. Jones* and *Robert P. Anderson,* all of Olathe, were with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This action was brought by David Koppel, a resident and property owner of the city of Fairway, and T. R. Heath and Eugene F. Engel, property owners and residents of the adjoining city of Roeland Park, to determine the validity of an ordinance passed by the City of Fairway under which a tract of land was rezoned from residential to retail business district classification.

The allegations of the petition and the agreed facts pertaining thereto are substantially as follows:

The J. C. Nichols Company is the owner of a triangular, twenty-three-acre tract lying in the northwest corner of the city of Fairway. The tract is bounded on the north by Fifty-fifth street, which is likewise the boundary between the cities of Fairway and Roeland Park, on the southeast by U. S. Highway 50 and on the west by the city of Roeland Park. This tract is presently zoned for residential purposes. The area surrounding the tract is all residential property and zoned for that purpose. Proceedings were initiated to amend the zoning ordinance to permit the use of the tract, excepting a strip 100 feet in width on the southeast boundary, for commercial purposes. Notice was published under G. S. 1949, 12-708. Protests were filed by more than twenty percent of the owners of frontage across the street north of the tract and the owners of the abutting lots on the west, all in Roeland Park. The protests on the southeast, filed by residents of Fairway, were less than twenty percent of the owners of the frontage.

Pursuant to the published notice a hearing was had on the proposed change. Protesters appeared and were heard. The governing body of the city of Fairway ignored the protests of the property owners located on the north and west in the city of Roeland Park, and the ordinance rezoning the tract for commercial purposes was enacted by the council by a five to three vote, which was less than a four-fifths vote. Plaintiffs then filed this action to determine the

reasonableness of the ordinance under the provisions of G. S. 1949, 12-712. From an order overruling defendant city's demurrer to the plaintiff's petition, the city appeals.

The determinative question is the effectiveness of the protests filed by the owners of property located outside the city of Fairway. If the protests were effective, then the amendment was not legally enacted and the other questions are premature. Conversely, if the protests should be ignored because of the location of the protesters' property, then the ordinance, having been passed by a clear majority of the governing body in the exercise of the power specifically conferred, is entitled to the benefit of the presumption of validity. In substance, the city's contention is that inasmuch as the protesters of more than twenty percent of the property fronting across the street to the north and west of the tract proposed to be rezoned are outside the city of Fairway the limitations of section 12-708 do not apply and that the majority vote of the council is sufficient to enact the amending ordinance.

To answer the question presented requires a review of our statutes. The power and authority to enact and amend zoning ordinances is conferred on cities by G. S. 1949, Ch. 12, Art. 7. Section 12-707 provides in part that the governing body of any city is authorized by ordinance to divide such city into zones or districts and to regulate and restrict the location of trades and industries. Section 12-708 imposes certain limitations on the conferred power and sets out the conditions to be observed in the enactment and amendment process. The section, in pertinent part, provides:

"If, however, a protest against such amendment, supplement, or change be presented, duly signed and acknowledged by the owners of twenty percent or more of any frontage proposed to be altered, or by the owners of twenty percent of the frontage immediately in the rear thereof, or by the owners of twenty percent of the frontage directly opposite a frontage proposed to be altered, such amendment shall not be passed except by at least four-fifths vote of the council or board of commissioners."

Municipalities are politically subordinate subdivisions of the state government and legislatures in conferring powers on them may impose limitations on these powers. (2 McQuillin, *Municipal Corporations*, 3 Ed., § 4.04.) Provision is generally made for protests to zoning changes by affected property owners or a certain percentage of them. This provision has been described as a limitation on the general powers of the municipal legislative body and required to be strictly enforced. (8 McQuillin, *Municipal Corporations*, 3

Ed. Rev., § 25.248.) Zoning ordinances, being in derogation of the right of private property, should be liberally construed in the property owner's favor, and where exceptions appear they are liberally construed in favor of the property owner. (8 McQuillin, *Municipal Corporations,* 3 Ed. Rev., § 25.72.) It may be requisite to an amendment of a zoning ordinance, particularly where a certain percentage of affected property owners protest, to require a unanimous vote of the zoning commission or the municipal legislative body approving the amendment. A requirement of this character has been ruled not an unlawful delegation of legislative power to property owners. (8 McQuillin, *Municipal Corporations,* 3 Ed. Rev., § 25.244.) A common provision, following that of the standard zoning act, is that if an ordinance constitutes an attempt to amend or change the regulations and district established by a previous ordinance, a protest may be filed by specified owners or a prescribed percentage of them, and, in this event, a unanimous, three-fourths or other required vote of the city council is necessary for the passage of the ordinance. A provision of this character is not invalid as an unlawful delegation of legislative authority to property owners.

A statute may provide a standard for measuring the percentage of protests against a zoning change, and if a statute provides a single standard for such a purpose, courts cannot create varying standards of measurements even to meet conditions not foreseen by the legislature. (8 McQuillin, *Municipal Corporations,* 3 Ed. Rev., § 25.248.)

Plaintiffs do not question the city's right to amend a zoning ordinance but contend that if such is done the city must strictly conform to the restrictions and limitations placed upon it by the enabling statute, and that in view of the protests filed by the plaintiffs the city is required under the statute to pass the ordinance by a four-fifths majority. The general rule is that the enactment of a zoning ordinance must strictly pursue the procedure provided by the statute enabling the city to zone. (8 McQuillin, *Municipal Corporations,* 3 Ed. Rev., § 25.58.)

The defendant city contends that under section 12-708 only those persons within the city of Fairway may protest the change in the zoning ordinance without regard to the effect of its zoning ordinances on adjoining frontage outside the municipality. Such is not the wording of our statute. Section 12-708 makes no requirement of residency or location of property other than that it be frontage property to that property proposed to be altered or

changed. It clearly appears that the legislative intent of the statute is to protect all designated property affected, whether located within or without the city adopting the changed zoning ordinance. It is true that even though two of the plaintiffs are located in an area just beyond the boundaries of the defendant city of Fairway they have, as abutting and frontage owners to the city, benefited from the past zoning ordinance and are now directly and harmfully affected by the rezoning ordinance. As property owners they are entitled to the enjoyment of their property.

No case precisely in point has been found which has considered a protest statute such as our statute; however, in an analogous case of *Cresskill v. Dumont*, 15 N. J. 238, 104 A. 2d 441, three adjoining municipalities joined with their residents and with the residents of the defendant borough of Dumont in seeking to set aside an amendment to the zoning ordinance of the borough of Dumont. Chief Justice Vanderbilt, in speaking for the court, stated:

"The appellant spells out from the language of these constitutional and statutory provisions that the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby land outside the municipality. Such a view might prevail where there are large undeveloped areas at the borders of two contiguous towns, but it cannot be tolerated where, as here, the area is built up and one cannot tell when one is passing from one borough to another. Knickerbocker Road and Massachusetts Avenue are not Chinese walls separating Dumont from the adjoining boroughs. At the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of Dumont. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning. There is no merit to the defendant's contention."

See also *Hamelin v. Zoning Board of the Borough*, 19 Conn. Sup. 445, 117 A. 2d 86.

The next question is: Do the plaintiffs have a right to maintain this action? Section 12-712 of the statute provides that any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the district court of the county in which such city is situated, against the governing body of said city. Their property having been affected by the

ordinance, plaintiffs have a statutory right and are proper parties to bring this action.

In view of what has been said, the trial court did not err in overruling the defendant city's demurrer to plaintiffs' petition. The judgment of the trial court is affirmed.

Price, J., dissents.

Robb, J. (dissenting): I am unable to agree with the theory of the majority opinion that residents, taxpayers, or those interested in property located in the city of Roeland Park, Kansas, in Johnson county, by reason of the provisions of G. S. 1949, 12-708; 12-712, receive any power or authority to become protesters in a zoning case involving property in the city of Fairway, or that such persons are thereby made such proper parties to the proceedings here involved that they can maintain the action they sought to maintain in the court below.

In my opinion the statutes are quite clear and must be considered in their entirety. They should not be divided into parts. Section 12-708 relates to boundaries, notice and hearings, and protests. As applied herein, Fairway is a municipality having a city planning commission and, therefore, comes under the first portion of the statute with respect to tentative reports, public hearings, and times and places of hearings, upon giving of notice, and final reports, after which the governing body may fix the boundaries, which boundaries the governing body may from time to time change, amend, or supplement, *"Provided,* Such proposed change shall first be submitted to the city planning commission . . . for recommendation and report: *And provided further, That not less than thirty days' notice* of any such proposed change shall first be published in the *official newspapers of such municipality* and a hearing be granted to any person interested at a time and place specified in such notice." (My emphasis.) Then follows the portion of 12-708 quoted heretofore in the majority opinion.

Section 12-712 is also set out in the majority opinion, and I wish to call particular attention to the words, ". . . and any taxpayer or any other person having an interest in *property affected.* . . ." (My emphasis.) Obviously, this is not a requirement for publication of notice *outside the city* involved, here the municipality of Fairway. However, under both 12-708 and 12-712 anyone interested

in any land in Fairway, whether it be by ownership, lease, or some form of sale contract, may appear and file a protest, but I do not believe that a municipality or the citizen of any municipality can exercise extra-territorial power over another municipality or the land contained therein. This is neither an injunction nor a nuisance action but is, in my opinion, an interference by the citizens of one municipality with a governmental function of another municipality, namely, its city planning. We cannot ignore the age-old rule that one city has no control over the government of another city which I think should be applicable not only to legislative functions but also to the executive and judicial functions of a city. By use of plain and unambiguous language directing where notice is to be published and the people who are to be reached, I think the legislature made clear its intention to include only one municipality and the citizens and the property thereof which, as applied in this instance, is the city of Fairway, Johnson county.

I would, therefore, reverse the judgment of the lower court in this case.

FATZER, J., dissenting: In view of the court's disposition of this case I must respectfully dissent. We are here concerned only with the process of enacting an ordinance by and for the city of Fairway—the exercise of a purely legislative power. The *sole* question presented is this and no more: May non-residents of the city who own no property therein, pay no taxes for its support, have no right to vote in its elections and are in no wise subject to its jurisdiction, participate in and control the process of enacting local legislation? In my opinion, they may not. It is conceded that by not considering the protest petitions of the residents of Roeland Park, the ordinance in question was legally adopted by a majority vote of the governing body of the city of Fairway. However, the court holds that it was proper under G. S. 1949, 12-708, to consider the protest petitions of the non-resident objecting petitioners (residents of Roeland Park), and because the ordinance was not adopted by at least a four-fifths vote of the governing body of the city of Fairway, *the ordinance was not lawfully adopted,* and the objecting plaintiffs could attack its validity under G. S. 1949, 12-712, as being *unreasonable*. The holding is unwarranted. The statutory right to attack the ordinance as being unreasonable does not carry the right to attack the mode or manner of its adoption. The two are wholly different.

At the outset, I wish to emphasize that in my opinion it is not necessary to now determine whether the objecting plaintiffs have such an interest as would entitle them to seek judicial relief against unreasonable or arbitrary action by the governing body of the city of Fairway, or judicially to challenge action by the city which might result in the creation of a nuisance. That is not the question the court decides. Hence, decisions which permit non-resident individuals and municipal corporations to challenge the reasonableness of zoning ordinances are not germane to the controversy before us. Nor does this case present the broad aspects of community or regional planning. Consequently, the views on that subject expressed in *Duffcon Concrete Products v. Borough of Cresskill*, 1 N. J. 509, 64 A. 2d 347, 9 A. L. R. 2d 678, and cases of that character have no relevance to this controversy.

That an enactment or amendment of a zoning ordinance by a city is the exercise of a legislative power is settled beyond cavil. In my opinion, that right belongs exclusively to the governing body of the city of Fairway. The corollary is that only those who are legally a part of the city may participate in that process. The parties cite no cases, and I know of none, where a court has sanctioned an effort to confer upon non-residents, legally disinterested individuals, the right to participate in the legislative process of a city in enacting a local law.

This brings me to G. S. 1949, 12-708, by which certain owners of frontage affected by a proposed amendment are authorized to materially alter the normal legislative process of a city. To that extent such owners are authorized to participate in the legislative process of amending a zoning ordinance. The question then is: Upon which owners of frontage is that power conferred? The only reasonable and feasible interpretation, in my opinion, is that effective protests may be made only by those owners of frontage affected, or frontage opposite or to the rear of the affected lands, where the frontage owned by the protesting party is *located within the city whose ordinance is proposed to be amended*. Any other result is contrary to settled concepts of government and law of this state.

I would reverse the judgment.