[L.A. No. 29904. In Bank. Jan. 27, 1972.]

MARY LOU SCOTT et al., Plaintiffs and Appellants, v.
CITY OF INDIAN WELLS et al., Defendants and Respondents.

**COUNSEL**

Albert S. Scott, Jr., in pro. per., for Plaintiffs and Appellants.

David J. Erwin for Defendants and Respondents.

**OPINION**

**PETERS, J.**—Plaintiffs Mary Lou and Albert Scott filed an action on behalf of themselves and other similarly situated landowners against the City of Indian Wells, California, seeking a declaratory judgment voiding the city's grant of a conditional use permit to construct a large planned development on land lying just within the city limits. Plaintiffs and the class they represent own neighboring land lying just outside the city limits. A demurrer to plaintiffs' first amended complaint was sustained without leave to amend, and plaintiffs have appealed from the ensuing judgment.

The pertinent allegations of the complaint may be summarized as follows: Plaintiffs Mr. and Mrs. Scott own a 200-foot by 200-foot parcel of land the southern edge of which abuts the northern limits of the City of Indian Wells. In November 1969 the city sent notice of hearing before the city planning commission to consider the granting of a conditional use permit to construct a planned development (two golf courses, tennis courts, clubhouses, 675 condominium units, 90 individual lots) within the city on land which abuts Scott's property and which was formerly zoned R-1, single family, single story residences.[1] Notice of hearing was mailed to Scott by mistake; no other abutting property owners residing outside the city limits were so notified of the hearing.

Scott inspected the public site plan of the proposed development and sent a letter to the planning commission well in advance of the meeting, suggesting certain restrictions on the development which would protect the view of property owners to the north of the development. Scott received no reply to this letter. At the hearing, when the commission chairman asked his clerk whether letters had been received, the clerk did not admit that Scott's letter had been received.

Scott attended the hearing of November 18, 1969. At that time Scott was first made aware that the development would include a heliport, several two-story buildings, and one six-story building. He also learned at that

---

[1]The authority of the planning commission to hear such applications is not contested in this proceeding.

time that his neighboring property owners had not been given notice of the hearing.

At the hearing the architect explained that the development would be "indigenous" to a neighboring country club development in the city. Taller buildings and commercial shops would be placed behind a hill, so that they would not be visible to members of the adjacent El Dorado Country Club. These buildings would, however, directly block the view of Scott and his neighbors. The architect refused to answer Scott's question as to why the development could not be made "indigenous" to his residential area as well. Scott was allowed to speak, but the planning commission members did not respond to Scott's objections to the development and apparently ignored him.

On December 4, 1969, Scott appeared at the city council meeting at which the planning commission's recommendation to grant the permit was approved. Scott asked to have a petition opposing the development, bearing 45 signatures (all apparently nonresidents of Indian Wells but owners of property within 300 feet of the development), read into the record. This request was refused, and "[s]aid petition was totally ignored. . . ."[2]

Throughout these proceedings, plaintiffs allege, the city "pursued a deliberate course of not giving notice [to plaintiffs and their class] to conceal their plans from interested northern area adjacent property owners, . . ." Plaintiffs cite municipal code sections which require that notice of hearing relating to a conditional use permit application be mailed to all landowners within 300 feet of the parcel under consideration.[3]

Finally, plaintiffs alleged that the project plans "deliberately discriminate against plaintiffs and similarly situated property owners . . . [and] in favor of the property of owners of Eldorado Country Club" by proposing to build a seven-story apartment building, liquor store, rental office, and heliport in a location quite close to plaintiffs' property but out of sight of the country club. Plaintiffs contended that the project could be built in such a way so as not to impinge on the view or tranquility of either group of landowners.

Defendant city demurred generally and specially, alleging that (1) the

---

[2]Although the council refused a request to have the petition read into the record, Scott nevertheless did read the contents of the petition aloud at the meeing.

[3]Plaintiffs allege and defendants do not deny that ordinance No. 32, section 5.03, captioned "Use Permits," provides that "[n]otice of hearing shall be given in the manner provided for a petition to the Planning Commission for a variance under Section 5.02 (A)(2) in this Ordinance." Section 5.02 (A)(2) allegedly provides that notice of hearing "shall . . . be mailed to . . . the persons to whom the property is assessed within 300 feet of the . . . property for which the variance is sought."

complaint did not state facts sufficient to constitute a cause of action; (2) plaintiffs had not alleged exhaustion of their administrative remedies; and (3) the complaint was uncertain. In support of the first ground the city argued in its points and authorities that (a) the complaint argued conclusions of law rather than fact, and (b) plaintiffs, as nonresidents, had no standing to sue. The trial court sustained the demurrer without leave to amend on the first ground specified, finding it unnecessary to rule upon defendant's other contentions. The court did not state whether it sustained the demurrer on defendant's theory (a) or (b) set forth above, or on some other basis.

Preliminarily, it must be noted that plaintiffs sued only for declaratory relief. ■ An action for declaratory relief may not be used to attack an administrative order. (*Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230]; *Triangle Ranch, Inc.* v. *Union Oil Co.,* 135 Cal.App.2d 428, 434 [287 P.2d 537].) ■ Review of planning commission proceedings regarding a conditional use permit is appropriate under Code of Civil Procedure, section 1094.5. (*Triangle Ranch, Inc.* v. *Union Oil Co., supra,* 135 Cal.App.2d 428, 434; *Mid-Way Cabinet etc. Mfg.* v. *County of San Joaquin,* 257 Cal.App.2d 181, 191 [65 Cal.Rptr. 37]; Cal. Zoning Practice (Cont.Ed.Bar 1969) § 12.11, p. 508.)[4]

"As against a general demurrer, however, it is unimportant that plaintiff's pleading was not in form a petition for mandamus or certiorari. All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus or certiorari has been stated, the general demurrer should have been overruled. [Citations.]" (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 638 [234 P.2d 981].) ■ Accordingly, an action for declaratory relief to review an administrative order should be regarded as a petition for a writ of mandate for purposes of ruling upon a general demurrer. (*Id., Hostetter* v. *Alderson, supra,* 38 Cal.2d 499, 500.)

Defendant city contends, as it did before the trial court, that "[p]laintiff has no standing as a nonresident nontaxpayer to challenge the zoning and use decisions of the defendant." In accord with this position the city further contends that "[i]t is not possible or constitutionally required that the ordinances of the City apply to areas outside of the City. The zoning ordinances are not designed to provide protection to nonresidents' property located outside the City, but rather for the benefit of residents."

---

[4]Section 1094.5 is also applied in reviewing the validity of a zoning *variance.* (*Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 767 [59 Cal. Rptr. 146, 427 P.2d 810]; *Cow Hollow Improvement Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160 [53 Cal.Rptr. 610].)

Whether a nonresident but obviously affected landowner has standing to contest a city's zoning, and whether the city owes the nonresident adjacent landowner any duty to consider his views or the effect of a proposed development upon his property, has not previously been settled in our state.[5] States which have considered the issue have generally held that affected property owners or residents have standing to contest a municipality's zoning even though they are not residents of the municipality. In the leading case of *Cresskill Borough* v. *Dumont Borough* (1953) 28 N.J.Super. 26 [100 A.2d 182], affirmed (1954) 15 N.J. 238 [104 A.2d 441], the Cresskill Borough and some of its residents brought suit to contest Dumont's rezoning of a parcel of Dumont property surrounded by non-Dumont land. The surrounding land was residential; Dumont attempted to zone its land for commercial use. The lower court, in holding the zoning void, held that "the restrictions and regulations in a zoning ordinance must be made with reasonable consideration to the character of the land and also to the character of the neighborhood lying along the border of the municipality adopting the ordinance." (28 N.J.Super. 26, 43.)

On appeal the New Jersey Supreme Court affirmed. Said the court: "The appellant [contends] that the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby land outside the municipality. Such a view might prevail where there are large undeveloped areas at the borders of two contiguous towns, but it cannot be tolerated where, as here, the area is built up and one cannot tell when one is passing from one borough to another. . . . *At the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of Dumont. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning.*" (15 N.J. 238, 247; italics added.)

In *Koppel* v. *City of Fairway* (1962) 189 Kan. 710 [371 P.2d 113], a Kansas statute gave landowners in the front and rear of the subject property the right to be heard. The Kansas Supreme Court interpreted the statute to apply to all *affected* property owners, not only to affected property

---

[5]*Silva* v. *City of Cypress* (1962) 204 Cal.App.2d 374, 377 [22 Cal.Rptr. 453], is not in point. There plaintiff did not own "any property or interest in property in any area affected or was potentially affected in any way. Nor is there any suggestion that he resides anywhere near the neighborhood or is actually or potentially aggrieved in any way personally." Nor, in that case, did the plaintiff allege that the land use control in question, whose effect was only local, effectively precluded his owning land or residing in the affected area.

owners who were also residents of the City of Fairway. The Colorado Supreme Court came to the same conclusion without benefit of statute (*Roosevelt* v. *Beau Monde Co.* (1963) 152 Colo. 567 [384 P.2d 96]), reasoning that the nonresident neighboring landowners would be just as affected by the zoning and otherwise had no way of having their interests represented. (Accord, *Schwartz* v. *Congregation Powolei Zeduck* (1956) 8 Ill.App.2d 438, 441 [131 N.E.2d 785, 786], refusing "to make a fetish out of invisible municipal boundary lines"; *Hamelin* v. *Zoning Board of The Borough* (1955) 19 Conn.Supp. 445 [117 A.2d 86].)

We find the foregoing authorities persuasive. In the early days of zoning,[6] when there were "large undeveloped areas at the borders of two contiguous towns" (*Cresskill* v. *Dumont, supra,* 15 N.J. at p. 247; see also 3 Anderson, American Law of Zoning, Metropolitan and Regional Planning, § 18.01, p. 336), the municipality's responsibility in using its zoning power might extend only to the municipal boundary lines.[7] In today's sprawling metropolitan complexes, however, municipal boundary lines rarely indicate where urban development ceases. We have come to recognize that local zoning may have even a regional impact. (See *People* v. *County of El Dorado,* 5 Cal.3d 480, 492-494, fn. 16 [96 Cal.Rptr. 553, 487 P.2d 1193].) Certainly it is clear that the development of a parcel on the city's edge will substantially affect the value and usability of an adjacent parcel on the other side of the municipal line.

To hold, under these circumstances, that defendant city may zone the land within its border without any concern for adjacent landowners would indeed "make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning." "[C]ommon sense and wise public policy . . . require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted. . . ."

---

[6]The first comprehensive zoning law in the United States is generally said to be that of New York in 1916. (Cal. Zoning Practice (Cont.Ed.Bar 1969) p. 2; 1 Metzenbaum, Law of Zoning (2d ed. 1955) p. 7.)

[7]In *Euclid* v. *Ambler Co.* (1926) 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114], the United States Supreme Court upheld the validity of zoning as a local land use control. In doing so it rejected the realty company's argument that "[i]f the Village of Euclid may lawfully prefer to remain rural and restrict the normal industrial and business development of its land, each of the other municipalities, circumadjacent to the City of Cleveland, may pursue a like course. Thus the areas available for the expanding industrial needs of the metropolitan city will be restricted, . . ." (Brief for appellees, p. 37.) The high court responded that the town was only channelling, rather than restricting industrial growth (272 U.S. at p. 389 [71 L.Ed. at p. 311]), with no resultant regional impact. The court cautioned, however, "It is not meant by this . . . to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way." (272 U.S. at p. 390 [71 L.Ed. at p. 311].)

(*Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 464 [327 P.2d 10].) ■ Indeed, the due process clause of the Fourteenth Amendment requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing. . . ." (*Mullane* v. *Central Hanover Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 873, 70 S.Ct. 652].) ■ Zoning does not deprive an adjacent landowner of his property, but it is clear that the individual's interest in his property is often affected by local land use controls, and the "root requirement" of the due process clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest . . . justifies postponing the hearing until after the event. . . ." (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 379 [28 L.Ed. 2d 113, 119, 91 S.Ct. 780, 786]; italic in original, fns. omitted.)

■ We are satisfied that the City of Indian Wells owes adjoining landowners who are not city residents a duty of notice to the extent given similarly situated city residents, a duty to hear their views, and a duty to consider the proposed development with respect to its effect on *all* neighboring property owners. ■ We are also satisfied that adjoining landowners who are not city residents may enforce these duties by appropriate legal proceedings and have standing to challenge zoning decisions of the city which affect their property.

■ In determining the sufficiency of a complaint against a general demurrer, we consider the demurrer as admitting all material and issuable facts properly pleaded. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) Although facts should be averred in "ordinary and concise language" (Code Civ. Proc., § 426), precise form and language are not essential. ■ "[T]he rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." (*Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436].)

■ Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]" (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638].) We have

held it error to sustain a demurrer without leave to amend even where the defect was one of substance. (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36]; *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 251 [74 Cal.Rptr. 398, 449 P.2d 462].) Moreover, abuse of discretion in sustaining a demurrer without leave to amend is reviewable on appeal even in the absence of a request for leave to amend. (Code Civ. Proc., § 472c; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 331 [253 P.2d 659].) While the complaint in the instant case is hardly a model of precise pleading, there are nevertheless averments of ultimate facts sufficient to constitute a cause of action on the basis of the city's failure to give notice as required by its ordinance.

The fact that the Scotts were inadvertently given notice of the proceedings before the planning commission does not mean that they are precluded from bringing this proceeding on behalf of the other adjoining owners who are not residents of the city. ██ Whether the Scotts may fairly and adequately protect the class frames an issue within the discretion of the trial court. ██ Should the court conclude that the named plaintiffs may not adequately represent the class, it should afford them an opportunity to amend their complaint to redefine the class or to add new individual plaintiffs. (*La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864, 871-872 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Diaz* v. *Quitoriano*, 268 Cal.App.2d 807, 811 [74 Cal.Rptr. 358].)

██ Government Code, section 65801, does not justify the order sustaining the demurrer. Section 65801 provides in pertinent part that no zoning action by a legislative or administrative body shall be set aside for procedural reasons "unless . . . the court shall be of the opinion that the error complained of was prejudicial, and that by reason of such error the party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error had not occurred. . . ." It seems clear that failure to consider the rights, desires, suggestions, and welfare of an entire class of affected landowners may well yield a "different result" from that obtained when these matters are properly considered. In any event, the matter may not be resolved on demurrer but only after consideration of all the facts and circumstances.

The judgment is reversed and the cause remanded to the trial court with directions to overrule the general demurrer, and to rule on the city's special demurrers to the first amended complaint.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.