Pfeifer, J.,
dissenting.
{¶ 34} This is a difficult case. The majority opinion has some logic on its side, and the end result is hardly unconscionable, but I am concerned that the resolution of this case -will make it harder for future plaintiffs with legitimate complaints to force the government to initiate appropriation actions in similar circumstances.
{¶ 35} The majority reaches three conclusions: (1) the city of Blanchester’s zoning change “imposes no limitation on Clifton’s use of his property whatsoever” and, therefore, Clifton cannot show a nexus between the zoning change and a diminution in the value of his property, (2) Blanchester cannot appropriate Clifton’s property, because it is not in Blanchester, and, therefore, (3) Clifton does not have standing to initiate an inverse-condemnation proceeding against Blanchester. I will address each of these conclusions in turn.

No Limitation

{¶ 36} It is clear that Blanchester’s zoning change does not directly limit Clifton’s use of his property. It cannot, because it is outside the Blanchester village limits. But it can indirectly limit Clifton’s use, and it can cause a *294 diminution of value in his property. It is obvious that it is possible for a zoning change to diminish the value of adjacent property within a municipality, even if indirectly. So naturally it is possible for a zoning change to diminish the value of adjacent property that is in a different political subdivision. I dispute the majority’s claim that there is “no limitation,” because it is possible that certain uses of the property are less feasible and that certain uses have less economic value than before the zoning change was made.
{¶ 37} The Supreme Court of the United States has stated that “regulatory takings challenges are governed by the standards set forth in Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 [98 S.Ct. 2646, 57 L.Ed.2d 631] (1978).” Lingle v. Chevron U.S.A., Inc. (2005), 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876. The court in Lingle stated that the primary factors to consider when evaluating regulatory-takings claims are “ ‘[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.’ ” Id. at 538-539, quoting Penn Cent. at 124. These inquiries are aimed at identifying “regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain. Accordingly, each of these tests focuses directly upon the severity of the burden that government imposes upon private property rights.” Lingle at 539. A “Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation’s economic impact and the degree to which it interferes with legitimate property interests.” Id. at 540.
{¶ 38} It is quite clear that the majority in this case has engaged in no such analysis. It may be difficult for Clifton to show that the zoning change has interfered with his legitimate property interests, but he should have the opportunity to establish that his rights under the federal or Ohio constitution have been infringed.

Blanchester Can’t Appropriate

{¶ 39} This is a troubling aspect of the case but one that ought not prevent this court from doing justice to the parties. It is obvious, as the majority opinion discusses, that Blanchester does not have the authority to appropriate property that is not within its jurisdiction. A plausible solution in this situation, if Blanchester is shown to have effected a taking, is to require Blanchester to buy the affected property or pay the amount of diminution. That remedy would fall within the concept of a virtual taking. Relying on United States Supreme Court precedent, the Court of Appeals of Utah has written that “if a regulation falls short of eliminating all economically beneficial use of land, an analysis of a *295 complex of factors indicates whether the interference is so great that a virtual taking has nonetheless occurred.” Arnell v. Salt Lake Cty. Bd. of Adjustment (2005), 2005 Utah App. 165, 112 P.3d 1214, ¶ 17, citing Palazzolo v. Rhode Island (2001), 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592. The factors to be considered include “ ‘[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations * * * [and] the character of the governmental action.’ ” Id., quoting Penn Cent., 438 U.S. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631. “These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from ‘forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.’ ” Palazzolo, 533 U.S. at 617-618, quoting Armstrong v. United States (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554.
{¶ 40} In this case, Clifton is seeking to avoid bearing alone the burden of a zoning change and the effect that it has on his property. Whether he will be able to prove a taking or diminution in value is beside the point at this time. We should analyze the various factors that the United States Supreme Court has determined bear on the issue and decide whether Blanchester has effected a virtual taking. If it has, we should order an equitable remedy and require Blanchester to make Clifton whole, either by buying his property or by paying him the amount of diminution. The end result would be the same as in an appropriation action — the government entity (Blanchester) would own the property, and the affected property owner (Clifton) would be compensated for harm suffered, whether directly or indirectly inflicted, at the hand of a governmental entity (Blanchester).

Standing

{¶ 41} The majority ultimately concludes that Clifton lacks standing because his problem is not redressable by an appropriation action because Blanchester cannot appropriate property outside its jurisdiction. Given the current state of the law, that is a sound conclusion. But ought not the law seek to do equity in such a circumstance? If a zoning change really does diminish the value of an adjacent property, then it diminishes the value whether the adjacent property is in the same or a different political subdivision. Why would the law countenance a remedy in one instance but not the other? All of the involved parties are in Ohio. Ought not the law of Ohio provide a remedy for an aggrieved landowner even if he lives in a different political subdivision from the one whose zoning change diminishes the value of his property?
{¶ 42} Courts have considered similar issues and concluded that residents of adjacent political subdivisions can have standing for some purposes. For instance, in Scott v. Indian Wells (1972), 6 Cal.3d 541, 549, 99 Cal.Rptr. 745, 492 *296 P.2d 1137, the Supreme Court of California stated that a political subdivision considering a zoning change “owes adjoining landowners who are not city residents a duty of notice to the extent given similarly situated city residents, a duty to hear their views, and a duty to consider the proposed development with respect to its effect on all neighboring property owners. We are also satisfied that adjoining landowners who are not city residents may enforce these duties by appropriate legal proceedings and have standing to challenge zoning decisions of the city which affect their property.” (Emphasis sic.) In Cresskill v. Dumont (1954), 15 N.J. 238, 247, 104 A.2d 441, the Supreme Court of New Jersey stated that a political subdivision “owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of [itself]. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning.” See also Koppel v. Fairway (1962), 189 Kan. 710, 371 P.2d 113, paragraph one of the syllabus; Constr. Industry Assn. of Sonoma Cty. v. Petaluma (C.A.9, 1975), 522 F.2d 897, 905.
Fowler, Demos, & Stueve, William G. Fowler, and Gregory J. Demos, for appellant.
Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Robert S. Hiller, for appellee.
{¶ 43} I am persuaded that Clifton’s problem is redressable. The concept of a regulatory taking or a virtual taking and our authority when sitting in equity are broad enough to fashion a remedy for Clifton. By concluding that Clifton has no standing and consequently that property owners can never have standing when a political subdivision other than the one where their property is located makes a zoning change, this court is giving a green light to political subdivisions to make zoning changes that unduly affect property owners in adjacent cities and towns. Surely this court does not want that to happen.
{¶ 44} I conclude that it is possible for Clifton to show that the Blanchester zoning change limits his use of his property, that even though Blanchester cannot appropriate Clifton’s property, it can compensate him as if it had appropriated his property, and therefore that Clifton raises an issue that is redressable. I conclude that Clifton has standing. I would allow the case to move forward on its merits.
{¶ 45} I dissent.
*297 Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Laura Eddleman Heim, Deputy Solicitor, urging affirmance for amicus curiae, state of Ohio.