Filed 12/2/24  Vanier v. Alexander CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ERIC VANIER et al., | |
| Plaintiffs and Appellants, | G063395 |
| v. | (Super. Ct. No. 30-2019-01049560) |
| CHERYL ALEXANDER, as Trustee, etc. | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Seni Linnebur, Temporary Judge (Pursuant to Cal. Const., art. VI, § 21). Reversed. Respondent's request for judicial notice. Granted in part and denied in part.

The Walker Law Firm and Joseph A. Walker for Plaintiffs and Appellants.

Feig Law Firm, Scott Feig; Coast Litigation and Evan Cote for Defendant and Respondent.

* * *

In March 2023, appellants Jason Vanier and Eric Vanier (collectively, the Vaniers) filed a petition (Petition) concerning the Redman Family Trust dated April 30, 1992 (the Trust). The Vaniers, who claimed they were beneficiaries of the Trust, asserted Cheryl Alexander,[1] the trustee of the Trust, had failed to provide required accountings and otherwise failed in her duties as trustee. They sought to remove Cheryl as trustee and have a successor trustee appointed. They also asked the probate court to determine if a residual trust had been properly funded.

Cheryl demurred to the Petition. The probate court sustained the demurrer without leave to amend as to all but one claim on the ground the Vaniers lacked standing and, as to the remaining claim, on the ground of laches. We find the court erred in sustaining the demurrer without leave to amend and reverse the judgment of dismissal.

FACTS

I.

THE TRUST

In April 1992, Harold W. Redman (Harold) and his wife, Stephanie F. Redman (Stephanie), as settlors, trustors, and trustees, created the Trust.[2] When the Trust was created, Harold and Stephanie had two living

---

[1] Because some of the relevant individuals share a surname, we refer to some individuals by their first names to avoid confusion.

[2] The facts in this section are taken from the Petition and the exhibits attached thereto.

2

children, Cheryl Ann Russell (Cheryl) and Linda Sue Vanier (Linda). During the joint lifetimes of Harold and Stephanie, the Trust assets were to be used, in part, to maintain their accustomed manner of living. Under the terms of the Trust, upon the death of either Harold or Stephanie, the Trust's assets were to be divided into two trusts, the Survivor's Trust and the Residual Trust, with the surviving spouse continuing as trustee. The Survivor's Trust was to consist of the surviving spouse's interest in the trustors' community property, the surviving spouse's separate property, and an amount computed in specified ways to avoid federal estate tax. The Residual Trust was to consist of the balance of the trust estate and would be irrevocable.

According to the terms of the Trust, when the surviving spouse died, any remaining assets of the Survivor's Trust were to be added to the Residual Trust; specific bequests were to be made; and the remaining trust estate, if any, was to be divided into "as many equal shares as there are children of [Harold and Stephanie] then living and children of [Harold and Stephanie] then deceased leaving issue then living" and equal shares were to be given "to each living child" and "each group composed of the living issue of a deceased child."

Harold passed away in December 1992. Stephanie, the surviving spouse, did not divide the Trust's assets into the Survivor's Trust and the Residual Trust upon Harold's death as required by the Trust but waited until May 2016, when she divided the assets pursuant to a document entitled Allocation of Assets Agreement (the Allocation).[3] The Allocation purported to divide the Trust assets equitably between the Residual Trust and the

---

[3] Although the document is titled an "agreement," it is signed only by Stephanie and does not identify anyone else as a party to it.

3

Survivor's Trust and read in part: "[i]f it is later finally determined by a court of competent jurisdiction or otherwise that this allocation is inequitable, then the trust receiving the greater value shall pay to the trust receiving the lesser value the amount necessary to correct the inequity." In May 2016, Stephanie also amended the Trust to make Cheryl the sole beneficiary of the Survivor's Trust upon Stephanie's death (Trust Amendment).

Stephanie died on August 19, 2018. No later than the date of Stephanie's death, Cheryl became trustee of the Trust. The Petition alleges Linda predeceased Stephanie but does not provide Linda's date of death.

## II.

### INITIAL LITIGATION

Following Stephanie's death, the Vaniers—Linda's children—filed suit against Cheryl in the Superior Court of Orange County (the Prior Probate Proceeding). The Prior Probate Proceeding involved two related petitions seeking a determination of the validity of the Trust Amendment under which Cheryl became the sole beneficiary of the Survivor's Trust. Cheryl prevailed in the Prior Probate Proceeding and judgment was entered in her favor (Probate Judgment).[4]

The Vaniers also sued Cheryl in the United States District Court of California, Southern District (the Federal Litigation). The Federal Litigation involved claims to a specific annuity, which was part of the Survivor's Trust. Judgment was entered in Cheryl's favor in the Federal

---

[4] The Probate Judgment is the only document from the Prior Probate Proceeding included in the record on appeal. Cheryl's request that we take judicial notice of the Probate Judgment, attached as exhibit 1 to Cheryl's request for judicial notice, is granted.

4

Litigation (Federal Judgment) when the Vaniers withdrew their claims to the annuity.[5]

### III.

### THE CURRENT PETITION

On August 21, 2023, the Vaniers filed the Petition alleging: (1) Stephanie failed to properly fund the Residual Trust following Harold's death as required by the Allocation; and (2) Cheryl failed to provide accountings or distribute the Vaniers' portion of the Residual Trust. Based on their assertions, the Vaniers asked the probate court to determine if the Residual Trust was properly funded, compel distribution of the Residual Trust, suspend Cheryl's powers as trustee, remove Cheryl as trustee, and appoint a successor trustee. The Vaniers also alleged Cheryl violated Probate Code section 16061.7[6] by failing to provide them with complete copies of the Trust and its amendments when she gave statutory notice in September 2018. Appellants claimed that, despite repeated requests, they did not receive complete copies of the Trust until February 2020, and they sought damages under section 16061.9, subdivision (a) (section 16061.9 claim).

Cheryl demurred to the claims in the Petition on various grounds. The probate court sustained the demurrer without leave to amend on the ground the Vaniers lacked standing as to every claim in the petition

---

[5] The Federal Judgment and an order denying a motion to amend judgment are the only documents from the Federal Litigation included in the record on appeal. Cheryl's request that we take judicial notice of the Federal Judgment, attached as exhibit 2 to Cheryl's request for judicial notice, is granted. Her request that we take judicial notice of the order denying a motion to amend judgment in the Federal Litigation (exhibit 3) is denied.

[6] All further statutory references are to the Probate Code unless otherwise indicated.

except the section 16061.9 claim. The court sustained the demurrer without leave to amend as to the section 16061.9 claim on the ground of laches.

DISCUSSION

I.

APPEALABILITY

The Vaniers purport to appeal from the minute order sustaining Cheryl's demurrer without leave to amend.[7] "The general rule is that '[a]n order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order. [Citations.]' [Citation.] However, 'when the trial court has sustained a demurrer [without leave to amend] to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.'" (*Hamilton v. Green* (2023) 98 Cal.App.5th 417, 422–423.) We deem the probate court's minute order sustaining Cheryl's demurrer to the Petition without leave to amend to incorporate a judgment of

---

[7] Although entry of a judgment of dismissal normally follows an order sustaining a demurrer to an entire pleading without leave to amend "as a matter of course" (*Berri v. Superior Court* (1955) 43 Cal.2d 856, 860), no judgment was entered by the court in this case. Appellants blame the lack of a judgment of dismissal on Cheryl's failure to file a proposed judgment of dismissal. Appellants offer no explanation why they did not request dismissal, as they were entitled to do under Code of Civil Procedure section 581, subdivision (f)(1).

6

dismissal and interpret the Vaniers' notice of appeal as applying to that dismissal.

## II.

### STANDARD OF REVIEW

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ""'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may have been judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.""" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) When a demurrer has been sustained without leave to amend, "'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) "The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

## III.

### STANDING

In their Petition, the Vaniers alleged the Residual Trust was to be distributed to Linda and Cheryl and would be distributed to their issue only if either or both *predeceased both* of the Trustors." (Italics added.) The Vaniers alleged their mother, Linda, predeceased Stephanie, but they did not allege Linda predeceased Harold. Because the Petition failed to allege Linda predeceased both Harold and Stephanie, the probate court sustained the

7

demurrer without leave to amend on the ground the Vaniers lacked standing to bring a claim as to the Trust.

The allegation in the Petition that the Vaniers would be beneficiaries only if Linda predeceased both Harold and Stephanie is directly contradicted by the Trust, a copy of which was attached to the Petition. Under the terms of the Trust, the Vaniers were entitled to a share of the Residual Trust if Linda predeceased only the surviving spouse.

For purposes of a demurrer, "[w]e . . . 'accept as true both facts alleged in the text of the complaint and facts appearing in exhibits attached to it. If the facts appearing in the attached exhibit contradict those expressly pleaded, those in the exhibit are given precedence.'" (*Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245.) The Petition alleges Linda predeceased Stephanie, which would make the Vaniers beneficiaries under the terms of the Trust and give them standing to bring the Petition.[8]

On appeal, Cheryl raises a new standing argument, i.e., that the Trust Amendment removed the Vaniers as beneficiaries. The Trust Amendment made Cheryl the sole beneficiary of the Survivor's Trust, but it

_____

[8] The court also found there was no reasonable possibility of curing the standing defect. The petition, however, did not contain any allegation of the date of Linda's death or any admission that Linda outlived Harold. Accordingly, even if the Trust had included a requirement that Linda predecease both Harold and Stephanie, amendment was possible. "'[G]reat liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]' . . . Moreover, abuse of discretion in sustaining a demurrer without leave to amend is reviewable on appeal even in the absence of a request for leave to amend." (*Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 549–550.)

made no change to the beneficiaries of the Residual Trust. It therefore has no effect on the Vaniers' standing to sue as beneficiaries of the Residual Trust.

The probate court erred in sustaining Cheryl's demurrer without leave to amend on the ground of standing.

IV.

CLAIMS SEEKING TO SUSPEND, REMOVE, AND REPLACE CHERYL AS TRUSTEE

Cheryl demurred to the Petition on the ground that the Vaniers' requests to suspend, remove, and replace her were decided in the Prior Probate Proceeding and are therefore barred by the doctrine of claim preclusion.[9] "Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

The appellate record does not include either of the petitions underlying the Prior Probate Proceeding and the only record before us of what was addressed in that proceeding is the Probate Judgment. Cheryl points to a sentence in the Probate Judgment identifying "[w]hether Cheryl breached her fiduciary duties as trustee of the Residual Trust and should be removed" as a disputed factual issue. Although it is identified as an issue, the Probate Judgment did not address that issue and made no finding regarding Cheryl's duties as trustee of Residual Trust. The only issues decided in the

[9] Cheryl's demurrer and appellate briefs refer to "res judicata" and claim preclusion interchangeably. For clarity, we refer to the doctrine as claim preclusion throughout.

9

Probate Judgment were whether: (1) Stephanie had sufficient capacity to enter into the May 2016 Trust Amendment and Allocation of Assets Agreement; and (2) Cheryl exercised undue influence over Stephanie in connection with those documents. In fact, at one point in the Probate Judgment, the court specifically states it is "not making findings at this time on the issues relating to the failure to allocate or fund the residual trust"— the issues raised in the current Petition.

Based on the record before us, we conclude the issues raised by the Vaniers' current Petition relating to funding of the Residual Trust were not determined in the Prior Probate Proceeding and are not barred by the doctrine of claim preclusion.

V.

CLAIM REGARDING FUNDING OF THE RESIDUAL TRUST

Cheryl demurred to the Vaniers' claim regarding funding of the Residual Trust (the funding claim) on the grounds it was time-barred and failed to state sufficient facts to constitute a cause of action.

A. *Statute of Limitations*

Cheryl argues Linda was the only party with standing to bring the funding claim and that she had to do so within three years of Harold's death (for claims regarding internal affairs of the Trust) or four years (for breach of fiduciary duty). Cheryl cites sections 16460, subdivision (a)(2) and 17200, subdivision (a) in support of the alleged three-year statute of limitations. Section 17200, subdivision (a) allows a trustee or a beneficiary to petition the court concerning the internal affairs of the trust, but it does not provide any time limit within which to do so. Section 16460, subdivision (a)(2) provides that a claim against a trustee for breach of trust is barred "unless a proceeding to assert the claim is commenced within three years *after the*

10

*beneficiary discovered, or reasonably should have discovered*, the subject of the claim." (*Ibid.*, italics added.)

Cheryl cites Code of Civil Procedure section 343 in support of her argument that a breach of fiduciary duty claim must have been brought within four years of Harold's death. The four-year statute of limitations on a breach of fiduciary duty claim also does not arise until the claimant "'discovers or should have discovered all facts essential to his cause of action.'" (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 826–827.) So, none of the potentially applicable statutes of limitation began to run until the Vaniers knew or should have known of the alleged failure to properly fund the Residual Trust.

The Petition is devoid of any allegation asserting or even suggesting when Linda or the Vaniers discovered, or reasonably should have discovered, the alleged failure to equitably fund the Residual Trust. According to the allegations of the Petition, the Residual Trust was not even funded until May 2016—24 years after Harold's death—and the claim of inequitable funding could not have arisen before then.

""'[A] demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.] Accordingly, it may be difficult for a 'demurrer[] based on the statute of limitations to succeed because (1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the cause of

11

action might be, but is not necessarily, time-barred, the demurrer will be overruled.'" (*Citizens for a Responsible Caltrans Decision v. Department of Transportation* (2020) 46 Cal.App.5th 1103, 1117.) The Petition does not show that the funding claim is necessarily time-barred.[10]

Cheryl also argues the funding claim could only have been brought against Stephanie—the trustee responsible for dividing the trust property into the Survivor's Trust and the Residual Trust—and pursuant to Code of Civil Procedure section 366.2, subdivision (a) such a claim was required to be filed within one year of Stephanie's death. The unsupported assertion that Stephanie is the only party against whom the funding claim could have been brought is incorrect. Pursuant to section 16403, subdivisions (b)(1) and (b)(3), "[a] successor trustee is liable to the beneficiaries for a predecessor trustee's breach of trust if the successor unreasonably allows the breach to continue or does not take reasonable steps to redress it. [Citation.] The Probate Code thus imposes a duty on a successor trustee, on pain of personal liability for neglect, to make reasonable inquiry into the predecessor trustee's administration of the trust and remedy any breaches, in order thereby to preserve the trust estate for the benefit of the beneficiaries." (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1137–1138, fn. omitted.) The Vaniers' funding claim can be stated against Cheryl, the successor

___

[10] Cheryl alternatively argues that Appellants waited five years from Linda's death to file the Petition. The Petition does not allege the date of Linda's death and Cheryl does not ask us to take judicial notice of any document establishing the date of death, so even if the statute of limitations ran from Linda's death, the assertion of five years' delay beyond that time cannot be considered on this appeal. (See *Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 528 [in reviewing the sufficiency of a complaint, "we do not consider factual contentions not contained in the complaint, unless they are matters subject to judicial notice"].)

12

trustee, and is not time-barred under Code of Civil Procedure section 366.2, subdivision (a).

*B. Failure to State a Claim*

Cheryl argues the funding claim fails to allege facts sufficient to constitute a cause of action because it "is devoid of any allegation how the residual trust was not properly funded." "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.) The Petition alleges the Residual Trust was not properly funded, identifies the assets allegedly placed in the two trusts, and identifies steps that allegedly should have been taken to properly fund the Residual Trust. The allegations are sufficient to state a cause of action.

VI.

CLAIM FOR DISTRIBUTION OF THE RESIDUAL TRUST

Cheryl demurred to the Vaniers' claim for distribution of the residual trust (the distribution claim) on the ground it is barred by the doctrine of claim preclusion. In the Probate Judgment, the probate court found the Residual Trust did not have any assets at the time of Stephanie's death. Cheryl argues this finding bars the distribution claim because there is nothing to distribute.[11] Her argument puts the proverbial cart before the horse. The Petition alleges the Residual Trust was not funded upon Harold's

---

[11] Cheryl also contends the Petition fails to state sufficient facts on this claim. She does not support this argument with """cogent legal argument or citation to authority""" and the argument is therefore forfeited. (*Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939.)

death—at which time the Residual Trust was supposed to have become irrevocable—and still had not been equitably funded in May 2016, when Stephanie finally divided the assets into the two trusts. If the Vaniers' allegations are true, the inequitable funding of the Residual Trust might well explain why it had no assets at the time of Stephanie's death. On demurrer, we must take the allegations of the complaint as true (*Duncan v. The McCaffrey Group, Inc.*, *supra,* 200 Cal.App.4th at p. 360) and the claim is not, at this pleading stage, barred by the doctrine of claim preclusion.[12]

VII.

CLAIM TO COMPEL AN ACCOUNTING

Cheryl maintains the Vaniers' claim for an accounting (the accounting claim) fails to state sufficient facts and is barred by the doctrines of claim preclusion and laches. She argues the accounting claim fails to state sufficient facts because the Residual Trust had no assets as of the date of Stephanie's death. As set forth above, the argument ignores the allegation that the Residual Trust was inequitably funded in May 2016—a fact that, if true, could explain the Residual Trust's empty coffers at the time of Stephanie's death.

Cheryl's assertion that the accounting claim is barred by the doctrine of claim preclusion is based on an alleged finding by the probate court that Cheryl did not breach her fiduciary duty. As stated above,

---

[12] Cheryl also argues the Federal Judgment determined the issues raised by the Petition. The Federal Judgment did not address funding of the Residual Trust. Rather, it determined distribution of a Delaware Life annuity, found Cheryl had been receiving payments from the annuity since Stephanie's death, and found she was entitled to 100 percent of the remaining benefits under the annuity. Curiously, the annuity, which had been paid and will be paid to Cheryl, was designated as the primary asset of the Residual Trust by the Allocation.

14

however, the probate court specifically declined to make any finding in connection with the funding of the Residual Trust, so the issue has not been decided.

Cheryl also argues the accounting claim is barred by the doctrine of laches. "Laches is 'a failure on the part of a plaintiff to assert his rights in a timely fashion accompanied by a period of delay with consequent results prejudicial to the defendant.'" (*Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 913.) Cheryl contends she was prejudiced because she "administered the trust" between the date of the Probate Judgment and the time the Petition was filed. Even assuming the administration of the trust could constitute prejudice to Cheryl, the claimed administration of the trust is not alleged in the Petition and is not put before us by any document of which we can take judicial notice. It is, therefore, outside what can be considered on appeal. (See *Tran v. Nguyen, supra,* 97 Cal.App.5th at p. 528 ["we do not consider factual contentions not contained in the complaint, unless they are matters subject to judicial notice"].)

VIII.

CLAIM FOR DAMAGES UNDER SECTION 16061.9

In September 2018, Cheryl sent the Vaniers notice regarding the trust. Such notice is required by section 16061.7, which requires a trustee to give notice to beneficiaries upon the occasion of certain specified events, including a change in trustee. (§ 16061.7, subds. (a) & (b).) A beneficiary who has received such notice is entitled to receive a copy of the full trust terms upon request. (§ 16060.7.) The Petition alleges the Vaniers repeatedly

15

requested a complete copy of the trust terms, but Cheryl did not provide one until February 2020—almost two and a half years after she sent the notice.

In the Petition, the Vaniers seek damages incurred because of Cheryl's delay in providing the complete terms of the trust. (§ 16061.9.) Cheryl demurred to the section 16061.9 claim on the ground of laches and claim preclusion. The probate court sustained the demurrer to the section 16061.9 claim without leave to amend on the ground of laches, finding the three-year delay between February 2020 (when the Vaniers received complete copies of the Trust) and March 2023 (when they filed the Petition) "unreasonable." The court further found the Vaniers could have raised the issue in the Prior Probate Proceeding, so requiring Cheryl to litigate the issue now is "prejudicial."

"Laches may be raised by demurrer, but only if the complaint shows on its face unreasonable delay *plus* prejudice or acquiescence." (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 362.) "Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant . . . ." (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.) Further, "the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances . . . ." (*Ibid.*)

The Petition does not establish prejudice on its face and Cheryl did not affirmatively demonstrate prejudice by any document offered for judicial notice.[13] The probate court erred in resolving the factual issue of

_____

[13] In connection with the demurrer, Cheryl asked the probate court to take judicial notice of four documents: (1) the Probate Judgment; (2) the Federal Judgment; (3) an order denying a motion to dismiss in the Federal Litigation; and (4) a motion for leave to amend in the Prior Probate Proceeding. None of the documents mentions the September 2018 notice or sections 16061.7 or 16061.9.

16

laches at the pleading stage and the demurrer should not have been sustained on that ground.[14]

## DISPOSITION

Respondent's request for judicial notice is granted as to exhibits 1 and 2 and denied as to exhibit 3, which is irrelevant to our disposition of this appeal. The judgment of dismissal is reversed, and the matter is remanded to the probate court with instructions to enter an order overruling the demurrer and ordering Cheryl to answer the Petition. The Vaniers are to recover their costs on appeal.

GOODING, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

DELANEY, J.

---

[14] Cheryl argues the entire Petition is barred by the doctrine of laches because it was filed 226 days after the Probate Judgment was issued. That argument fails for the same reasons, i.e., laches is a question of fact and must be affirmatively demonstrated by the party seeking its protection.