**Bartolo M. VASSALLO, Respondent Below, Appellant,**

v.

**PENN ROSE CIVIC ASSOCIATION, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted on Briefs March 10, 1981.

Decided April 6, 1981.

Samuel V. Abramo of Abramo & Abramo, Wilmington, for respondent below, appellant.

Robert K. Pearce of Trzuskowski, Kipp, Kelleher & Pearce, P. A., Wilmington, for petitioner below, appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

McNEILLY, Justice:

Appellant sought a variance from certain terms of the applicable zoning code from the New Castle County Board of Adjustment (hereinafter "Board") in connection with the conversion of his single family dwelling into a multiple family dwelling consisting of three apartments. The Board granted the variance, and the appellee (hereinafter "Civic Association") sought review of that decision in the Superior Court. The Superior Court reversed the Board. Appellant now asks this Court to reverse the Superior Court and reinstate the Board's decision.

A threshold issue of primary importance in this case was whether the Civic Association had standing to obtain judicial review of the Board's decision pursuant to 9 *Del.C.* § 1353(a).* The crux of this issue is whether the Civic Association is "person aggrieved" within the meaning of § 1353(a). The Superior Court noted that there is a split of authority in jurisdictions which have considered this question under substantially similar zoning statutes, some courts construing the term restrictively so as to deny standing to civic associations, *e. g., Shore Acres Imp. Ass'n v. Anne Arundel Co. Bd. of Ap.*, Md.Ct.App., 251 Md. 310, 247 A.2d 402 (1968), while other courts apply a somewhat broader interpretation and hold that in some circumstances such associations may have standing, *e. g., Douglaston Civic Association, Inc. v. Galvin*, N.Y.Ct.App., 36 N.Y.2d 1, 364 N.Y.S.2d 830, 324 N.E.2d 317 (1974). In the absence of any contrary indication by the Legislature, we agree with the Superior Court that the *Douglaston* analysis is the better approach to the standing issue and we adopt it.

As noted by the New York court, the economic interests of the person seeking a variance from zoning restrictions will often be such that he has relatively little to lose and much to gain by incurring the expense involved in seeking variance approval. The economic interests of an opposing individual landowner, on the other hand, implicated by the variance request may not be sufficient to warrant assuming the considerable expense required to engage in full-scale litiga-

* This statute provides:

"Any person aggrieved by any decision of the Board of Adjustment, or any taxpayer or any officer, department, board of bureau of the County, may present to the Superior Court a petition duly verified alleging that such decision is illegal in whole or in part, and specifying the grounds of illegality. The petition shall be presented within 30 days after the filing of the decision in the office of the Board."

tion in opposition to the variance request, even assuming such owner had sufficient financial resources available for such litigation. Recognition of neighborhood and civic associations' standing in such cases permits these expenses to be spread among a number of opposing landowners thus enabling them to achieve some economic parity with the person seeking the variance. See *Douglaston*, 324 N.E.2d at 320.

Significantly, the "broader rule of standing is entirely consistent with the underlying purposes of our zoning laws. Our municipalities enact zoning ordinances in order to protect the public's health, welfare and safety. A challenge to a zoning variance focuses the court's attention on this public interest. To force a court to reject such a challenge on the grounds of standing when the group contesting the variance represents that segment of the public which stands to be most severely affected by it is, in our view, an ironic situation which should not be permitted to continue." *Id.*

■ Under the *Douglaston* analysis, there are four factors to be considered in determining whether a particular group has standing in a given case, to wit:

(1) whether the organization is capable of assuming an adversary position in the litigation;

(2) whether the size and composition of the organization indicates that it is fairly representative of the neighborhood;

(3) whether full participating membership in the organization is available to all residents and property owners in the community; and

(4) whether the adverse effect of the challenged decision on the group represented by the organization is within the zone of interests sought to be protected by the zoning law.

■ The Superior Court held an evidentiary hearing, see 9 *Del.C.* § 1353(e), to supplement the record vis-à-vis the standing issue and found that the Civic Association had satisfied the *Douglaston* criteria. Therefore, the Court ruled that the Civic Association did have standing under § 1353(a). We are satisfied that the Superior Court applied the proper law as to standing and that its ultimate conclusion is supported by record facts.

■ Appellant next argues that the Civic Association failed to follow the requirements of § 1353(a) and (b) in seeking judicial review of the Board's decision and that, therefore, the Superior Court had no jurisdiction. Specifically, appellant contends that the petition for review in the Superior Court was not filed within thirty days of the Board's decision as required by § 1353(a) and that the praecipe filed by the Civic Association requested issuance of a "citation on appeal" rather than issuance of a "citation of certiorari" as contemplated by § 1353(b). The Superior Court held that under *Biby v. Smith*, Del.Super., 272 A.2d 116 (1970), the Association's appellate filings were sufficient to invoke the Court's jurisdiction.

*Biby* holds that the filing of a praecipe tolls the statute of limitations subject to the qualification that the filing party must have a bona fide intent to diligently prosecute his claim and that there be no unreasonable delay in effecting service of process. Here the Superior Court found that within the thirty day period the Civic Association's counsel filed a proper petition for review of the Board's decision in the Superior Court. However, the accompanying praecipe was incorrectly captioned as an appeal, rather than as a certiorari proceeding. The Superior Court also found that the Association's counsel discovered his mistake and filed a proper praecipe and petition within the thirty days which, unfortunately, were lost or misplaced in the Prothonotary's office. After several weeks of discussions between the Association's counsel and Prothonotary officials attempting to rectify the problem, a proper praecipe and petition were finally filed by counsel, recorded by the Prothonotary and eventually served on the proper parties. Applying the *Biby* rule to these facts, the Superior Court concluded:

"that the circumstances in this case indicate that petitioner did diligently attempt to file the proper praecipe and petition within the 30 day time limit. Any delay in effecting service of process was due primarily to inadvertent mistakes by petitioner's counsel and Prothonotary employees, and was not 'unreasonable' within the meaning of *Biby*, at least where no prejudice to other parties resulted therefrom. The unintentional errors attributable to petitioner's counsel herein are easily distinguishable from the deliberate action by plaintiff's counsel in *Biby* which caused the delay in service of process there."

The fact findings upon which the Superior Court relied are supported by the record, and we perceive no legal error in the Court's analysis. Thus, there was no abuse of discretion in the Court's determination that its jurisdiction was properly invoked in this case.

■ Lastly, appellant argues that there was substantial evidence in the record to support the Board's decision on the merits allowing the requested variance. The parties agree, and the Superior Court held, that because the variance here sought related to certain "area" requirements, as distinguished from restrictions on the use of the property, the variance must be judged under the "exceptional practical difficulties" test enunciated in *Bd. of Adjustment, Etc. v. Kwik-Check Realty*, Del.Supr., 389 A.2d 1289 (1978). As noted by the Superior Court, the factors to be considered under this test in determining whether a variance should be granted are:

"the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; *whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements in the character of that use of the property which is*

*a permitted use under the use provisions of the ordinance.*"

389 A.2d at 1291 (emphasis added).

After examining the record, the Superior Court held that there was insufficient evidence to permit a finding that the hardship or difficulties experienced by appellant were caused or created by the zoning restrictions from which he sought relief by the variance application. Therefore, the Superior Court reversed the Board's decision to grant the variance.

The zoning district wherein appellant's property is located permits the conversion of a single family dwelling into a multiple family use (*i. e.*, apartments) upon conformance with certain special requirements. Appellant, by his variance application, sought relief from several of these requirements including, *inter alia*, the following: that the lot upon which the converted dwelling is located contain at least four thousand square feet for each family to be accommodated thereon; that the building contain at least one thousand square feet of floor space for each family to be accommodated therein; that any additions to the building necessary for the conversion not extend into the front yard, side yards or rear yard of the lot as otherwise required in the zoning district.

The record before the Board conclusively established the following facts. Appellant purchased the property in question with a single family dwelling thereon in 1975 long after the applicable zoning code was adopted. In December, 1976, appellant obtained a building permit to add a second floor onto the house. Appellant's purpose for this addition was to provide space so his parents could live with him. Because the improved building was to be used solely by appellant and his immediate family, this improvement was not subject to the conversion requirements stated above. Appellant's parents moved in for a while after the enlargement was completed but did not remain long. Once appellant's parents moved out, the building, as improved, was too large for the needs of appellant and his remaining fami-

ly. Consequently, appellant sought approval from the Board to convert the building into multiple dwelling units (one for the use of appellant's family and two to be rented out) and in connection therewith sought the variance from the special area-type requirements applicable to such conversions mentioned above.

 Under these circumstances it is clear that the hardship from which appellant sought relief was simply that the improved house is now too large for the needs of his family. Thus, appellant's problem is a personal one and is not a problem inherent in the land itself or in the application of the zoning regulations to the land. Such personal problems are not generally appropriate subjects for relief by way of the variance procedure. See 3 Anderson, *American Law of Zoning* § 18.53 (2d ed., 1977). Moreover, as noted by the Superior Court, appellant's hardship is largely self-imposed and, therefore, insufficient to sustain a variance. See *Janaman v. New Castle County Bd. of Adjustment*, Del.Super., 364 A.2d 1241 (1976), and 3 Anderson, *supra*, §§ 18.44 and 18.56. We are persuaded by the Superior Court's analysis of this aspect of the case:

"Apparently no variance was needed in order to enlarge the house for use by his own family. However, by proceeding without a variance respondent assumed the risk that at some future point the house would be too large for his family's use. There is no apparent reason why respondent could not have avoided the problem simply by following the conversion regulations prior to improving the building and seeking any necessary variances at that time. In this manner, respondent could have added the additional apartment units to his house, used them for his own family while the need existed, and then placed the units on the rental market when they were no longer needed by his own family."

 The time for seeking variance approval relating to improvements to real property comes before such improvements are commenced and not, as in this case, after they have been completed.

The decision of the Superior Court reversing the decision of the Board is hereby

AFFIRMED.