**BRANDYWINE PARK CONDOMINIUM COUNCIL, Taylor Hanavan, Ronald Bennett, and Reda Beer, Petitioners,**

v.

**MEMBERS OF the CITY OF WILMINGTON ZONING BOARD OF ADJUSTMENT, William G. Turner, Jr., and William E. Ward, Respondents.**

Superior Court of Delaware,
New Castle County.

Aug. 31, 1987.

Richard D. Levin and Olha N.M. Ryba-koff, of Connolly, Bove, Lodge & Hutz, Wilmington, for petitioners.

Kevin T. Peck, of the City of Wilmington Law Dept., Wilmington, for respondents.

Daniel F. Wolcott, Jr. of Potter, Anderson & Corroon, Wilmington, for Rokeby Realty Co., intervenor.

GEBELEIN, Judge.

Petitioners have filed a complaint seeking a writ of certiorari to review a decision of the City of Wilmington Zoning Board of Adjustment filed August 17, 1987. 22 *Del.C.* § 328. Petitioners further seek a restraining order "staying the decision of the Board, which order shall include, but not be limited to, a prohibition of the issuance of any building permit by the City of Wilmington Department of Licenses and Inspection for construction on or development of the subject property ..." pursuant to 22 *Del.C.* § 328(b).

The immediate petition for a restraining order arises from a series of City of Wilmington agency actions which resulted in the issuance of a building permit for the construction of an office building at 3 Mill Road in the City of Wilmington. The Court entertains jurisdiction over the application pursuant to 22 *Del.C.* § 328, which provides in pertinent part that "... the court may, on application, on notice to the board (of adjustment) and on due cause shown, grant a restraining order."

The facts are as follows. A building permit for 3 Mill Road was issued on April 27, 1987 by the Commission of Licenses and Inspection (L & I) of the City of Wilmington. The permit was issued to Rokeby Realty Company pursuant to the recommendation of the City of Wilmington Design Review Commission, which reviewed the structure design as required in 2 *Wilm. C.* § 48-25.1(b). Petitioners are residents of a condominium located directly across the river from the proposed site. The petitioners reside in New Castle County, but not in the City of Wilmington.

Petitioners Brandywine Park Condominium Council and residents Taylor Hanavan, Ronald Bennett and Reda Beer, appealed that decision of the Review Commission to the Wilmington Zoning Board of Adjustment for a *de novo* review, in accordance with 22 *Del.C.* § 324 and 48 *Wilm.C.* 65, *et seq.* and in accordance with L & I instruc-

tions. The Board conducted a public hearing on petitioners' application on June 1, 1987. The Board announced that it affirmed the L & I application on June 24, 1987; but the formal decision was not filed until August 17, 1987.

Petitioners allege that the Board decision is illegal because:

1. The permit is contrary to public and petitioners' interests;

2. The prepared structure violates setback provisions under applicable C-6 zoning in that the planned setback is less than 10 feet from the street line (which petitioners allege is the top of the bank on the Brandywine River) in violation of § 48-28(d) of the City Code;

3. The statutory scheme violates Article III of the U.S. Constitution if, as the Board decided, it has no jurisdiction to review environmental issues, since it denies petitioners' right of appeal on this issue and due process of law; and

4. The issuance of the building permit did not properly consider the effect on the environment as required in various provisions of Chapter 24 of the City Code; and

5. The permit was issued without proper consideration of the impact on the neighboring river and parkland.

At argument in this Court, the City Solicitor argued for affirmance of the Board decision, but expressed no opinion on the restraining order application. A representative of Rokeby Realty, the developer, orally requested permission to intervene. The Court granted the representative an opportunity to argue; and now grants his motion to intervene as a party respondent. Superior Court Civil Rule 24(a).

■ The threshhold issue for determination is whether petitioners' have standing to seek review of the Board decision. The applicable statute, 22 *Del.C.* § 328 provides that any persons jointly or severally aggrieved by a decision of the Board of Adjustment may petition the Court for relief. In determining whether petitioners meet that standard, it is significant to note that the Board found petitioners to be a "per-

son[s] aggrieved", a requisite finding for status to appeal to the Board, under 22 *Del.C.* § 327. The Board in its decision discussed the issue at length, concluding that public policy and common sense dictate that persons may be aggrieved even if not a resident within municipal boundaries. The Board cited *Vassallo v. Penrose Civic Association*, Del.Supr., 429 A.2d 168 (1981) as favoring a broad rule of standing in determining classes of aggrieved persons in zoning cases. It also cited as persuasive *Scott v. Indian Wells*, Cal.Supr., 6 Cal.3d 541, 99 Cal.Rptr. 745, 492 P.2d 1137 (1972). That case held that a non-resident, but affected landowner, had standing to contest a city's zoning, and that the city owed a non-resident, adjacent landowner a duty to consider his views and the effect of a proposed development on his property. *Id.* 99 Cal.Rptr. at 749–750, 492 P.2d at 1140–1142. The court stated that to hold "that defendant may zone land within its border without any concern for adjacent landowners would indeed 'make a fetish out of invisible municipal boundary lines ...'". *Id.* 99 Cal.Rptr. at 749, 492 P.2d at 1141, citing *Kissinger v. City of Los Angeles*, Cal.App., 161 Cal.App.2d 454, 327 P.2d 10, 17 (1958). The analogy to the case at bar is apparent and persuasive.

The Board also found that the petitioners met the Delaware Supreme Court's four criteria in *Vassallo* to determine whether a group constitutes an "aggrieved person". Specifically, the group was capable of assuming an adversary position in litigation; the Council was fairly representative of the neighborhood; all condominium owners can belong to the Council (which the Board found fulfills *Vassallo's* intent since its requirement of membership by all residents cannot be fulfilled by a condominium association); and it is within the zone of interest meant to be protected by the zoning law. *Vassallo*, 429 A.2d at 170.

The Board considered and rejected the holding of cases in neighboring jurisdictions which define an aggrieved person as one who owns property in the community from which the appeal occurs. For example, the court in *Cablevision Div. of Sammons C., Inc. v. Zoning Hearing Bd.*, Commonwealth Ct.Pa., 13 Pa.Cmwlth. 232, 320 A.2d 388 (1974), held that a person who owns property outside of the municipality in which the subject property is located is not a person entitled to appeal a zoning board decision. *Id.* 320 A.2d at 390.

The Court is persuaded by the Board's analysis and the policy cited.[1] Deference to the factual determination of the Board regarding standing is appropriate, as it is supported by substantial evidence on the record. *In re Beattie*, Del.Super., 180 A.2d 741 (1962); *Sutton v. Board of Adjustment*, Del.Super., 200 A.2d 835 (1962). Thus, since the petitioners properly had standing before the Board, they have standing to seek review in this Court as person aggrieved.

■ The second issue that must be addressed is whether "due cause" to grant a restraining order has been shown. There has been no caselaw cited to the Court that defines "due cause" as it is used in 22 *Del.C.* § 328. Although the strict requisites of Chancery Court Rule 65 applicable to temporary restraining orders may not be applicable under this statute, a determination of "due cause" requires a finding of some probability of success on the merits, as well as a showing of a balancing of harm and the possibility of irreparable injury.[2] An examination of the merits raised upon appeal are determinative.

■ Petitioners argue that the decision of the Board is illegal because it did not take into account the requirements of Section 48–2 of the City Code. In particular,

---

1. Likewise, the statute in question gives the right to petition to the Superior Court to "Any person or persons, jointly or severally aggrieved by any decision of the the board of adjustment ...". The statute does not limit such right only to residents of the municipality in question.

2. There is no doubt that continued construction of this building could operate to severely prejudice petitioners' remedial rights if successful. There is further no doubt that stopping construction would significantly prejudice the developer. The Court, however, need not reach these competing interests.

petitioners argue that the Brandywine River is a street requiring a setback.

Section 48–2 of the Code defines a street as "a road, place, square or other way set aside or; used as a right of way for *common street purposes.*" (Emphasis added.) Section 48–28 requires structures erected in a C–6 district (the zoning in this case) shall be set back from the street line a minimum of 10 feet. Petitioners argue that the City ordinance contemplates C–6 zoning only along major arteries (Sec. 48–25.1) running in and out of the City, and that the Brandywine is such an artery. The Board found after an inspection and review of the minutes of the Design Review Commission that the river near the project site is too rocky and shallow to be used for the type of transportation envisioned for streets. Clearly, the river was not "set aside or used" for common street purposes. No evidence was presented to the Board that the river was used for anything other than recreational purposes.

The Court notes the existence of substantial evidence on the record below to support the Board's finding that the Brandywine River is not a street. The project, thus, would be exempt from the setback requirements of 2 *Wilm.C.* § 48–29(d). It is unlikely that petitioners could prevail on this argument.[3]

■ The petitioners further argue that the Board has jurisdiction to decide environmental issues. Section 5–706(1)(a) of the City Charter specifically provides that the zoning board of adjustment shall hear and decide appeals in zoning matters where error by an administrative official is alleged in the enforcement of zoning ordinances, regulations and maps. This charter language is more explicit than 2 *Wilm. C.* § 48–62(a) and 22 *Del.C.* § 324, which state that appeals may be taken by any person aggrieved by any decision of the building inspector or other applicable officer. Chapter 48 on zoning requires the Design Review Commission to examine compatibility and visual harmony of pro-

posed buildings with the environment; it requires no environmental impact study. The chapter also outlines the requirements for building permits, focusing on use and design rather than environmental impact. 1 *Wilm.C.* § 48–68.

Article IV, Section 24 of the City Code outlines additional requirements for erosion and sediment control in the issuance of building permits. Section 24–11(b) states that the Department of Licenses and Inspections must determine whether or not land-disturbing activity is subject to the City's approval, and, if so, whether a standard or detailed plan is required.

Interpreting all of the regulatory parts as a cohesive whole, it appears that the erosion control plan is within the reviewing authority of the Board. In particular, the Court notes that the Board accepts appeal from "any decision" of the administrative officer. The City Code imposes duties to make erosion and sediment decisions upon the administrative officer, therefore, those are subject to review. The Board in this case tried *de novo* those issues raised below.

■ Petitioners' environmental concerns were heard by the Board. While deciding improperly that it had no jurisdiction to consider the issues, the Board went on to consider them and found evidence refuting these concerns of petitioners. In particular, the Board noted that the Wetlands Division of the Delaware Department of Natural Resources and Environmental Control stated in a letter that it did not have jurisdiction over the project and that no approval from that Department was necessary for construction. The Board further concluded that Rokeby's reports and filings complied with 1 *Wilm.C.* § 24–11; and that the concerns were met. The Board specifically considered Rokeby's post-hearing submission of detailed plans showing how the proposed gambion system was designed to protect the river and determined them adequate.[4]

---

3. The issue of whether or not this area was properly zoned C–6 is not before the Court.

4. Petitioners further argue that at the hearing they were denied the ability to cross-examine witnesses. It appears that no request to cross-

 On appeal the burden of proof is on petitioner to show that the Board's decision is arbitrary and unreasonable and that there is no substantial evidence to support its findings. *Mobil Oil Corp. v. Board of Adjustment*, Del.Super., 283 A.2d 837 (1971). Since it appears that "substantial evidence" exists to support its findings, the Court would be required to affirm the decision of the Board.

This is not a decision on the merits and the record has not been fully developed; however, a review of the facts as presently of record indicates that petitioners are unlikely to prevail on the merits. The request for a restraining order must be DENIED.

IT IS SO ORDERED.

examine was made at the Board hearing. The Court will not consider this issue.