SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5257

February 23, 2015

David C. Hutt
Morris James Wilson Halbrook &
Bayard, LLP
Attorney for Appellant
107 West Market Street
P.O. Box 690
Georgetown, DE 19947

James P. Sharp
Moore & Rutt, P.A.
Attorney for Appellee
122 West Market Street
Georgetown, DE 19947

RE:     *The Village at Hwy One v. Bd. of Adjustment of Sussex Cty.*
        C.A. No. S14A-07-001 THG

Dear Parties:

Before the Court is The Village at Highway One's ("Applicant") appeal from the Sussex

County Board of Adjustment ("Board"). At issue is the Board's decision to grant a special use

exception to allow for a double-sided off-premise sign[1] ("billboard") to be erected on the property,

but to deny a variance request with regard to the proposed billboard's height. Based on the facts of

the case and the relevant case law, the Court **AFFIRMS** the Board's decision.

## FACTS
### Procedural History

On March 12, 2014, Applicant filed an application[2] for a special use exception to construct

a billboard on Applicant's property, and for a ten foot height variance from the billboard height

---

[1] Exh. 6.

[2] The Application was titled Board of Adjustment Case Number 11382.

requirement. A public hearing was subsequently held on April 21, 2014 to address the application. At the conclusion of the hearing, the Board voted to table the application until the next meeting on May 5, 2014. At the May 5 meeting, the Board discussed the application further and decided to grant the application as to the special use exception, but deny it as to the height variance. On June 3, 2014, following its determination to grant the application in part and deny it in part, the Board issued a written decision ("Board's Decision") documenting its findings of fact and explaining its reasons for denying the variance. On July 3, 2014, Applicant filed a Notice of Appeal with regard to the Board's denial of the variance request in Superior Court. The Board filed its Return on Appeal on July 30, 2014. Briefing on the case concluded on December 1, 2014. The Court is now addressing Applicant's appeal.

**Substantive Facts**

The piece of property at issue has an interesting past that has played a part in shaping the physical attributes of the lot. The property is located east of Route 275A Airport Road in Rehoboth, Delaware at the intersection of Airport Road and Route 1. The property's identification number on the tax map is Parcel Number 3-34-13.00-325.02. The piece of land is 20,272 square feet, which is slightly less than half an acre in square footage. The land lies in a C-1 zone, a commercial zone.

The property is unique in shape, size, location, and with regard to the number of commercial buildings it houses. First, the property is a very small piece of commercial property, consisting of less than half an acre of land. Second, the property has a fairly unique shape in that it most closely resembles a triangle. Third, the property is an island lot, since it is surrounded on two sides by Airport Road, and on one side by Route 1. Lastly, the land currently houses two businesses, Liquid Surf and Skate Shop and Big Chill Surf Cantina, a marquee sign, and a parking lot for the two

businesses.

The plot has been in use since 1937, potentially housing one structure that year. By 1961, multiple structures existed on the small plot. By 1992, a great deal of development had occurred in the area around the lot, and by 1997, the land housed four structures. The plot was purchased by Applicant in 2004. When purchased, the property housed four buildings, two of which were later removed from the site by Applicant. The significance of the property's history is that it shows that structures have existed on the lot prior to the enactment of the County's zoning code ("the Code"). Due to the land's unique size, shape, location, and development, and the County's current zoning code, the lot would be unbuildable, and virtually useless, today.[3]

At the April 21, 2014 hearing, Applicant, through his counsel ("Counsel"), went through each of the Code's requirements to erect a billboard on property in a C-1 zone. According to Counsel "[e]ach of the requirements, except for the height requirement, is met in [the]application."[4] This statement was made with regard to Applicant receiving a special use exception.

After discussing the special use exception, Counsel moved on to discussing the height variance request. The application sought permission to increase the proposed billboard's height by ten feet, up to 35 feet, since the Code only allows billboards to have a maximum height of 25 feet. Counsel explained the two building's currently located on the lot are 22 feet and 23 feet tall. Counsel told the Board that the proposed billboard's dimensions were ten feet by thirty feet; however, he

_____

[3] Because of a 60 foot set back requirement for buildings imposed by the Code, no building could be erected on the property today without the use of a variance. However, it is worth noting that is not the situation here. There are two businesses on the plot to date.

[4] April 21 Hearing Transcript, pg. 11.

admitted that "[a]nother common size for a sign of this nature is 12 by 25. . . ."[5]  Counsel reasoned that if the Board denied the variance, travelers would only be able to see the top two feet of the sign, because the billboard would be located behind the buildings, and would therefore be useless.  He argued that if the billboard was raised ten feet, it would be above the sight lines of the buildings and would be usable for advertising.  Counsel then went through the five statutory factual predicates necessary for granting a variance in Sussex County.

Upon Applicant's conclusion of its case, the Board sought testimony from those opposed to the application.  The Board only heard from Sanford Hazard ("Hazard"), a neighboring business owner located adjacent to the property at issue.  Hazard's chief concern was that the billboard would overshadow his land, business sign, and business.  Hazard testified in complete opposition of the sign,[6] stating ". . . I feel that the LLC, Village at Highway One, has enough with the two businesses on there that with this sign, I think it's just going to overtax and be detrimental to everybody around it. . . ."[7]  He went on to say, "I feel that this commercial property makes enough that they don't really need the sign."[8]

After Hazard spoke in opposition, the Board decided to table the discussion until its May 5, 2014 meeting. On May 5, 2014, the Board discussed the application further and decided to grant the application as to the special use exception, but deny it as to the height variance.  The Board

---

[5] *Id.* at pg. 15.

[6] Hazard specifically address the special use exception, not the variance.  A Board member asked Hazard "Would you say the special use exception that they're going for will affect adversely the uses of the adjacent and neighboring properties"?  To which Hazard answered "Yes." *Id.* at pg. 32.

[7] *Id.*

[8] *Id.*

subsequently issued the Board's Decision on July 3, 2014. The Board's Decision highlighted the

following relevant findings of fact:

4. The Board found that . . . there are two (2) commercial buildings on the Property.
5. The Board found that . . . the Applicant purchased the Property in 2004 and that the buildings have been on the Property since 1954.
6. The Board Found that . . . the Property is unique due to its odd shape.
7. The Board found . . . that under the current Zoning Ordinance the lot would be unbuildable. . . .
8. The Board found that . . . the area is predominately commercial.
9. The Board found . . . that the proposed billboard will meet all the . . . requirements and will not exceed the permitted square-footage for a billboard.
10. The Board found that . . . the use will not substantially adversely affect the uses of surrounding and neighboring properties.
11. The Board found that . . . there are other billboards in the area.
   . . .
14. The Board found that . . . the proposed sign is consistent with the uses of the area.
15. The Board found that . . . the height variance is needed to allow the billboard to be seen over the existing buildings on the Property.
   . . .
23. . . . Mr. Hazard testified that the Applicant's property is at full capacity and does not have adequate parking.
24. . . . Mr. Hazard testified that the proposed billboard will overshadow his business.
   . . .
26. . . . Mr. Hazard testified that the Applicant's proposed sign will be detrimental to the neighboring properties.
   . . .
32. Based on the findings above . . . the Board determined that the application met the standards for granting a special use exception but did not meet the standards for granting a variance. The proposed billboard at the height of twenty-five (25) feet does not substantially affect adversely the uses of adjacent or neighboring properties.
   The Property is already *heavily developed* with two (2) commercial buildings and a marquee sign and the Applicant has demonstrated that the variance is needed so that the billboard can be seen over its existing buildings. By increasing the height of the proposed billboard, the *Applicant is creating its own hardship*. The billboard can be placed on the property in strict conformity with the Sussex County Zoning Code and the variance is not

needed (emphasis added).[9]

## STANDARD OF REVIEW

As has been articulated in several other opinions, this Court has limited appellate review of the factual findings of the Board.[10] Superior Court's review is limited to whether "the agency's decision is supported by substantial evidence and whether the agency made any errors of law."[11] The Court will not "weigh the evidence, determine questions of credibility, or make [its] own factual findings."[12] The Court does not act as a trier of fact, and will not superimpose its own personal judgment on that of the Board's.[13]

Substantial evidence is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."[14] It is evidence from which an agency could fairly and reasonably reach the conclusion it came to.[15] If substantial evidence exists to support the Board's decision, the Court will affirm the decision even if it may have reached the opposite conclusion had the case come before it in the first place.[16] "Absent an error of law, the Board's decision will not be disturbed as long as there is substantial evidence to support its conclusions."[17]

---

[9] Appendix to Appellant's Opening Brief, Exhibit A.

[10] *Yost v. Bd. Of Adjustment of Sussex Cty.*, 2011 WL 4826112, *2 (Del. Super. Sept. 20, 2011); *Dexter v. New Castle Cty. Bd. of Adjustment*, 1996 WL 658861, *2 (Del. Super. Sept. 17, 1996).

[11] *Yost,* 2011 WL 4826112 at *2.

[12] *Bd. Of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 329 (Del. 2012).

[13] *Holowka v. New Castle Cty. Bd. of Adjustment*, 2003 WL 21001026, *3 (Del. Super. April 15, 2013).

[14] *Dexter*, 1996 WL 658861 at *2.

[15] *Holowka*, 2003 WL 21001026 at *3.

[16] *Dexter*, 1996 WL 658861 at *2.

[17] *Yost,* 2011 WL 4826112 at *2.

6

On review, "[t]he party seeking to overturn the Board's decision has the burden of persuasion to show that the decision was arbitrary or unreasonable."[18] "If the Board's decision is fairly debatable, there is no abuse of discretion."[19] "In this process, '[t]he Court will consider the record in the light most favorable to the prevailing party below.'"[20]

## DISCUSSION
### Requirements for Desired Billboard Construction

The Code provides that billboards are permitted in any C-1 General Commercial District, "after obtaining a special use exception. . . ."[21] A special use exception may be granted by the Board provided it "finds that, in its opinion, as a matter of fact, such exception[] will not substantially affect adversely the uses of adjacent and neighboring property."[22] The Code further mandates that a billboard's surface space must not exceed more than 600 square feet total (i.e., both sides' surface areas must be 300 square feet), and, among other things, not "exceed 25 feet in height from ground level."[23] However, the Board may, in its discretion, grant:

> A variation in the yard requirements in any district so as to relieve practical difficulties or particular hardships in cases when and where, by reason of exceptional narrowness, shallowness or other unusual characteristic of size or shape of a specific piece of property at the time of the enactment of such regulation or restriction or by reason of exceptional topographical conditions or other extraordinary situation or condition of such piece of property. . . , the strict application of each regulation or

---

[18] *Mesa Commc'n Group v. Kent Cty. Bd. of Adjustment*, 2000 WL 33110109, *6 (Del. Super. Oct. 31, 2000).

[19] *Id. quoting Mellow v. Bd. of Adjustment of New Castle Cty.*, 565 A.2d 947, 956 (Del. Super. 1988).

[20] *Holowka*, 2003 WL 21001026 at *4 *citing General Motors Corp. v. Guy*, 1991 WL 190491, *3 (Del. Super. Aug. 16, 1991).

[21] *Sussex Cty. C.* §115-159.5 (B).

[22] *Sussex Cty. C.* §115-210.

[23] *Sussex Cty. C.* §115-159.5 (B), (C).

restriction would result in peculiar and exceptional practical difficulties to or exceptional hardship upon the owner of the property.[24]

Though the Code is willing to grant variances to property owners, such grants are intended to be used sparingly. The Code states:

> Such variance[s] shall comply, as nearly as possible, in every respect with the spirit, intent, and purpose of this chapter, it being the purpose of this provision to authorize the granting of variation only for reasons of demonstrable and exceptional hardship *as distinguished from variations sought by applicants for purposes or reasons of convenience, profit or caprice* (emphasis added).[25]

In order to assure that the spirit of the Code is realized in application, the Board and the General Assembly[26] have created five requirements that must be factually present in order for a variance to be granted.[27] These five factors are:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not circumstances or conditions generally created by the provisions of the Zoning Ordinance or code in the neighborhood or district which the property is located.

> (2) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance or code and that *the authorization of a variance is therefore necessary to enable the reasonable use of the property* (emphasis added).

> (3) That such unnecessary *hardship has not been created by the appellant* (emphasis added).

---

[24] *Sussex Cty. C.* §115-211 (A)(1).

[25] *Id.*

[26] It is worth explaining that each of Delaware's three counties' Boards of Adjustment draw their power to regulate land use from separate statutes.. *Verleysen*, 36 A.3d at 329. This has resulted in three materially different statutes that have different requirements for zoning and the grant of variances. *Id.* at 330.

[27] 9 *Del. C.* §6917 (3).

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located and not substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.[28]

## Case Law Interpretation of Variance Elements

At issue in this appeal is whether, based on the record below, Applicant has satisfied all five requirements for a variance. Specifically, there is contention as to whether Applicant has satisfied the "no reasonable use" requirement and the "self-created hardship" requirement. The absence of either requirement is a *per se* bar to the grant of a variance.[29] These two requirements will now be discussed in turn.

Though only persuasive law,[30] the Court finds the distinction between an "area" variance and a "use" variance to be helpful in explaining what the Applicant is seeking. In *Bd. of Adjustment of New Castle Cty. v. Kwik-Check Realty, Inc.*, the Delaware Supreme Court adopted the Superior Court's view that two types of variances exist.[31] It explained "the rationale, which we approve, is that a use variance changes the character of the zoned district by permitting an otherwise proscribed use . . ., whereas an area variance concerns only the practical difficulty in using the particular

---

[28] 9 *Del. C.* §6917 (3); 115-211 (B).

[29] *See Verleysen*, 36 A.3d at 331-33.

[30] *Verleysen*, 36 A.3d at 330-31. "The statute that governs proceedings before the Sussex County Board of Adjustment is materially different from the statute pertaining only to New Castle County. . . . In particular, the New Castle County statute does not *require* the Board of Adjustment to find that the 'unnecessary hardship or exceptional practical difficulty has been created by the appellant.'" *Id.* Notably, the statute governing Sussex County "unambiguously requires the Sussex County Board of Adjustment to find that the difficulty was not created by the applicant before it may grant a variance." *Id.* at 331.

[31] *Bd. of Adjustment of New Castle Cty. v. Kwik-Check Realty, Inc.*, 389 A.2d 1289,1291 (Del. 1978).

9

property for the permitted use."[32]

**Reasonable Use**

Reasonable use of property is not a determination as to whether the applicant intends to use its land in a reasonable way. Reasonable use, instead, addresses the value or usefulness of the property to the owner.[33] If the property in question can be reasonably utilized, or is being reasonably utilized, without the existence of the non-conforming structure sought, the applicant cannot establish the necessity of a variance.[34] Reasonable use may exist even if it is not the applicant's preferred use.[35] If the applicant fails to demonstrate the property cannot be reasonably used without a variance, the variance application must be denied.[36] In short, the Code contemplates "enable the reasonable use of the property" to mean that without a variance, the property at issue would be of such minimal use or value as to virtually render it worthless to its owner.

It must be explained that an owner's or "preferred use" of its property may in fact be "reasonable" in that the use is not obscure or outlandish for the given area. However, case law provides multiple examples of applicants seeking variances for reasonable uses of their properties, which were later denied because such property was already being reasonably utilized.[37] Therefore,

---

[32] *Id.*

[33] *B.E.T., Inc. v. Bd. of Adjustment of Sussex Cty.*, No. 214, 1984, 497 A.2d 784 (Del. Apr. 29, 1985).

[34] *Verleysen*, 36 A.3d at 332.

[35] *See B.E.T., Inc.*, No. 214, 1984, 497 A.2d 784.

[36] *Verleysen*, 36 A.3d at 333.

[37] *See, e.g., Verleysen*, 36 A.3d 326 (holding that the applicant failed to establish the "no reasonable use" requirement because he did not demonstrate that the property could not be reasonably used without a barbeque area or shed, and because the applicant was already reasonably using the land for a swimming pool); *B.E.T., Inc.*, No. 214, 1984, 497 A.2d 784 (affirming denial of variance because property could be developed for reasonable use, even if not use applicant wanted); *Yost*, 2011 WL 4826112 (finding that applicant could not demonstrate a variance to

10

when a piece of property is already, or can be, reasonably utilized by its owner, an additional preferred use, even if reasonable, will prevent the applicant from establishing this requirement.

## Application

The record makes clear that Applicant is already reasonably utilizing its lot. The evidence presented at the hearing indicates there are two businesses already located on the small piece of land. It also shows the property houses a parking lot and a marquee sign. The grant of a special use exception and the grant of a variance can be, and were here, considered separately. A special use exception was granted to Applicant, allowing it to use the property for the preferred use of erecting a billboard, but that does not, by extension, grant Applicant permission to build the billboard in accordance with its own desired dimensions. Understandably, Applicant wants the proposed billboard to be a certain height for better viewing by travelers on Route 1, but the property's worth is not contingent on Applicant receiving the height variance. Though constructing a billboard on Applicant's lot may be a reasonable way to use the property, especially given it is in a C-1 zone and other billboards exist in the immediate area, the billboard's height is not necessary for the lot to have value to the Applicant. The Board properly denied the variance on this ground.

## Self-Created Hardship

An applicant for a variance has a self-created hardship if it "[comes] to the restricted subject property with a particular unpermitted use in mind and mindful of the impossible area restrictions[38]

_____

preserve a waterfront view was necessary for the "reasonable use" of his property).

[38] It should be noted that practically speaking, any prior knowledge of a zoning regulation that bars the use or variance sought would make obtaining a variance virtually impossible. *Mesa*, 2000 WL 33110109 at *6. Though a self-imposed hardship is a *per se* bar to the grant of a variance, this Court finds the relationship between prior knowledge of the zoning restriction and the rise of a self-imposed hardship confusing and troubling in that it is circular reasoning.

11

for that use."[39] Further, a self-created hardship arises from "difficulties uniquely personal to the owner, rather than intrinsically related to the property itself."[40] When a property owner *can* comply with the applicable zoning code by amending its plans for the property, but chooses instead to seek a variance, the hardship is self-imposed (emphasis added).[41] Conversely, "a hardship is not self-imposed if it 'result[s] from inherent and pre-existing characteristics' of the property."[42] In sum, when "[t]he difficulty results from the [a]pplicants' preferred use of the land, and not the particular features of the property,"[43] the hardship the applicant suffers is self-created.[44]

## Application

Applicant's ability to establish the "self-created hardship" requirement turns on the distinction between the Code's permitted use and Applicant's preferred use. This is similar to New Castle County's distinction between "area" variances and "use" variances. Applicant, by the Board's grant of the special use exception, has permission to erect a billboard on its land, a permitted use. However, Applicant, knowing the height restriction for billboards in a C-1 zone is 25 feet, wants its billboard to be 35 feet, ten feet higher than the restriction. The Court believes such a request is a

---

[39] *Verleysen*, 36 A.3d at 332 *citing CCS Investors, Inc. v. Brown*, 977 A.2d 301, 321 (Del. 2009).

[40] *Mesa*, 2000 WL 33110109 at *6 *quoting Dexter*, 1996 WL 658861 at *5.

[41] *See Dexter*, 1996 WL 658861, at *5 *citing Vassallo v. Penn Rose Civic Ass'n*, 429 A.2d 168, 172 (Del. 1981). The Court believes a better test for determining the existence of a self-imposed hardship would be the distinction between the Code's "permitted use" and the applicant's "preferred use." This test would make it clear as to whether an applicant for an variance is creating its own hardship.

[42] *Verleysen*, 36 A.3d at 332 *citing McLaughlin v. Bd. of Adjustment of New Castle Cty.*, 984 A.2d 1190, 1193 (Del. 2009).

[43] A property's features are not necessarily limited to only the natural features of the land, such as elevation, water flow, or rock formation. The property's features that can create a hardship also include structures on the land that predate the applicant's ownership.

[44] *See Verleysen*, 36 A.3d at 332; *Yost*, 2011 WL 4826112 at *4; *B.E.T. Inc.*, No. 214, 1984, 497 A.2d 784; *Groves v. Bd. of Adjustment of Sussex Cty.*, 1987 WL 25469, *4 (Del. Super. Nov. 10, 1987).

preferred use.[45] Applicant *can* comply with the height restriction for billboards, but because its small lot is already densely populated with two buildings, a marquee sign, and a parking lot, it *wants* to erect a billboard that is ten feet higher than what is permitted(emphasis added). The Applicant *can* also amend its plans for the billboard's surface area dimensions from 10 feet by 30 feet to 12 feet by 25 feet. This would provide some relief as to the billboard's visibility. It is also noted that because the billboard is double-sided,[46] the sign's visibility will not be an issue for one direction of traffic flow. Applicant's ability to comply with the Code coupled with its desire to construct a billboard under its own terms demonstrates that this is a self-created hardship. Applicant, is therefore, seeking the variance for purposes of convenience, profit, and/or caprice.

Applicant believes that the uniqueness of the small lot in conjunction with the preexisting buildings makes the hardship not self-imposed. But the hardship is personal to Applicant in that it has the ability to alter its plans and comply with the Code, but prefers to seek a variance. Applicant came to the table with the desire to build a billboard to a prohibited height. Applicant's need for the variance has everything to do with its preferences for the sign's visibility and efficient advertising and nothing at all to do with the physical uniqueness of the lot. "While it is understandable, it does not mean that the variance is in any way related to some physical circumstance or condition unique to" the property.[47] Thus, even though it is practical to build the billboard ten feet higher than what the Code allows, that alone, is not sufficient to demonstrate that the hardship is not self-created.

---

[45] This is akin to an "area" variance in that Applicant has the permission and ability, through the grant of a special use exception, to build a billboard on its land, but wishes to build it in a way to prohibited by the Code.

[46] Ex. 6.

[47] *Yost*, 2011 WL 4826112 at *4.

**CONCLUSION**

Applicant has failed to establish two of the five factual predicates necessary in Sussex County to grant a variance. The non-existence of either requirement is a *per se* bar to a variance under *Verleysen*. The Court, therefore, has no reason to address the remaining three factual requirements under 10 *Del. C.* §6917 (3) and the Code. The Court finds the Board committed no legal error, that there is substantial evidence supporting its decision, and that a reasonable mind could reach the conclusion it came to. The decision of the Board is **AFFIRMED**.


*/s/ T. Henley Graves*

T. Henley Graves